CHIEF JUSTICE HARDIN
delivered the opinion op the court.
The Marion Circuit Court having in the suit of J. J. Vance’s administrator against said Vance’s heirs and creditors adjudged a sale of certain real and personal estate to satisfy the decedent’s debts, the commissioner appointed to make the sales proceeded to do so, in conformity to the judgment, on the 4th day of March, 1872, and thereupon sold in several distinct parcels, as personal property, the machinery of a planing-mill, most of which was purchased by the appellees, Foster & Ray, who agreed to but did not execute bond for the aggregate amount of their purchases, nor did they take actual possession of the machinery, for the reason that the sale was made subject to the rights of one Ricketts, who as lessee of the mill was entitled to the use of the machinery for near one month succeeding the sale.
It appears that about six days after the sale, and while it was understood between the commissioner and the appellees *391 that they would comply with the terms of their purchase, the most valuable part of the machinery was accidentally destroyed by fire; and afterward, and for that reason, the appellees refused to give their bond or pay the prices at which they had become the accepted bidders for the property.
Afterward, in June, 1872, the commissioner having made his report of sales, a rule was laid on the appellees, at the instance of Nance’s administrator, in effect requiring them to show, if they could, why they had failed to comply with the terms of their purchase. To that rule the appellees responded, relying for their exoneration on the partial destruction of the property by fire before the sale had been confirmed or the actual possession had been changed. The issue thus presented, whether the loss occasioned by the burning should be borne by Nance’s estate or the appellees, was tried by the court and decided in favor of the latter; consequently the court refused to confirm the sale, and discharged the rule. From that judgment this appeal is prosecuted.
There is no contrariety of evidence as to the terms of the sale of the machinery; nor is it pretended that the-sale was not fairly and regularly made, and such a sale as ought to have been confirmed if the property had not been partially destroyed. The essential inquiry to be determined therefore is, did the appellees by their purchase acquire such a right to the property and incur such correlative responsibility as to render it equitable and just to confirm the sale, and coerce a compliance on the part of the appellees with the terms of their purchase, notwithstanding the accidental loss of part of the property ?
If it be true, as contended for the appellees, that their bids for the several parcels of machinery and their acceptance by the commissioner were not effectual for any purpose until approved by the court, and could have only operated to transfer the title, then, as from the time of confirmation, *392 we readily concede that the loss sustained in this case should fall on the estate of Vance and not on the appellees. But in our opinion both the rights which the appellees acquired, and the responsibilities they incurred by becoming the accepted bidders for the property, greatly exceeded those resulting from mere proposals or offers to purchase subject to the approbation of the court. The principle can not, we think, be questioned that where at the time a sale is made no valid ground for setting it aside exists the accepted bidder is entitled to his purchase, however much the property may appreciate in value between the sale and time for confirming it. This being so, why should he not be held bound by his purchase, although from accidental causes the property in the mean time may become impaired or depreciate in value?
In the case of McLean v. The Hartford Fire Ins. Co. (1 Selden, 151) it is said, “In England the, biddings in the master’s office are in the nature of proposals for the purchase, subject, of course, to the approbation of the chancellor, without which they have no validity, even prima facie. But with us the sale is strictly judicial, binding all parties from the time when the property is struck off, and can not be set aside in general except for reasons which would prevent a specific performance in ease of a contract of purchase between individuals.”
Whether this language of the New York court does or not go further in favor of upholding judicial sales than the practice in this state would authorize, it sufficiently sustains and illustrates the view we entertain in this case, that the sales to the appellees being such when made as would entitle both parties to have them confirmed, they at that time operated to vest in the appellees an inchoate title, wffiich the court might by its order of confirmation complete, as of the date of the sales, and thus by adjudging the property to have belonged to the appellees have allowed the accidental loss to have fallen on *393 them. As for any sufficient cause for setting the sales aside, they might have been annulled from their date, this court thus determining the ownership of the property and consequent liability to loss not to have been changed by the sale.
If we are right in this, the only remaining inquiry is whether, after the rights of the parties and their relative responsibilities had become fixed by the sale, subject only to the ratification of the court, those rights and responsibilities were affected by the subsequent accidental loss of the property, occurring as it did without the fault of either party.
We know of no principle of practice which would authorize a court of equity to hold that the rights and liabilities of the parties were so changed or impaired by such a casualty or misfortune as to entitle the purchaser to shift the loss from himself to the original owner by electing to avoid the sale.
It results that the court below erred in discharging the rule and in refusing to confirm the sale.
Wherefore the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.