## H. H. KLAIR v. MALIND ASBY, ET AL.

**Wills—Construction.**

A testator by his will freed his slaves and devised a house and lot to his executors in trust for such slaves, and set apart to each his or her part of said house, and provided if any of them should fail to occupy their part they should have no power to put tenants into it, and directed "that when it shall become difficult for said slaves and their offsprings to occupy said house and lot, owing to the great increase in their number, that it shall be advantageous to them all to sell said house and improvements, my executors shall do so, and the proceeds of sale shall be invested for their benefit in some way, so as to accrue to them the greatest permanent benefit. The portions of all * * * to be equal, the children of any that may have died taking the portion of the ancestor; and if any die leaving no issue, the interest of that one or more * * * to go to the survivors." It was held that the executors were to decide when a sale was necessary, and where the executors are dead the chancellor, having all the interested parties before him, has the power to do what the executors might have done, and having acted, his action is conclusive until reversed or set aside, and that under such will the devisees named took an estate in fee, and hence it was not necessary to name children of devisees who were alive as parties to a proceeding to sell.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

December 18, 1875.

OPINION BY JUDGE COFER:

Calver and wife conveyed a lot of ground in Louisville to Clark, to be held by him in trust for John Murphy during life, and after his death for such person or persons as Murphy might, by will or otherwise, in writing direct. Murphy, by his last will, emancipated his slaves, twelve in number, and by a subsequent clause devised the lot to his executors in trust for said manumitted slaves; and after setting a part to each his or her part of the house, and providing that if any of them should fail to occupy their part of said house they should have no power to put tenants into it, he directed "that when it shall become so difficult for said slaves and their offsprings to occupy said house and lot, owing to the great increase in their number, that it shall be advantageous to them all to sell said house and improvements, my executors shall do so, and the proceeds of sale shall be reinvested for their benefit in some way, so as to accrue to them the greatest permanent benefit. The portions of all said slaves are to be equal, the children of any that may have died taking the portion of the ancestor; and if any die leaving no

issue, the interest of that one or more so dying to go to the survivors."

Only one of the persons nominated as such qualified as executor, and he died without having executed the power of sale. This suit in equity was brought by one portion of the beneficiaries against the others, and also against the heirs at law of the deceased executor, to obtain a sale of the property. A sale was decreed, and the appellant became the purchaser, but declined to execute bonds according to the requirements of the decree; and upon being ruled to do so, or show why he should not, he responded (1) that the chancellor had no power to decree the sale, and that he would not on that account acquire a valid title, (2) that some of those having an interest in the property were not parties to the suit, and even if the court had power to decree the sale, he would not acquire the entire title. The vice-chancllor made the rule absolute, and from that order this appeal is prosecuted.

It appears that two of the devisees are dead without surviving issue, and that one of the survivors has five children; but those children were not made parties to this suit. It also appears that three of the devisees are married women.

It is argued by counsel for the appellant that as the steps required by the statute regulating proceedings to obtain judicial sales of real estate belonging to married women were not taken, the judgment and sale are void; and they cite *Barrett v. Churchill,* 18 B. Mon. 387, in support of their position. This suit was commenced, and judgment for a sale rendered while the revised statutes were in force. The case cited may be regarded as stating the law under these statutes to have been that the general powers of the chancellor to decree the sale of the real estate of infants were limited and restricted to the particular mode of proceeding therein indicated. As very similar restrictions were placed upon the power of the chancellor to decree the sale of the lands of married women, we think the same rule applies to such proceedings as was applied to proceedings to sell the real estate of infants, and that the chancellor now has no general power to decree the sale of the lands of married women, except in the mode pointed out by the statute.

But we concur with the counsel for the appellees that the statute has no application to this case. The will of John Murphy created a trust in favor of the appellees, and directed the trustees to make a sale on the happening of a named event; and he gave them power to decide when that event happened; and there can be no doubt,

at the time and under the circumstances under which the sale was decreed by the chancellor, but that such sale would have been a valid execution of the power. The trustee being dead, the chancellor, who will not allow a trust to fail for the want of a trustee, upon being applied to, and having all the parties interested before him, will himself undertake to do that which the trustee, if living, might and ought to have done. Percy on Trusts, Secs. 248, 749; Story's Equity, Secs. 1059–1061. The chancellor having power to execute the trust, his decision that the time had arrived when the testator intended the property to be sold, is conclusive, until reversed or set aside, and the appellant has, therefore, acquired a valid title, unless, as his counsel contends, the devisees named in the will took an estate for life, only with remainder to their children; for in that event, the five children of one of the first devisees not being before the court, whatever interest they may have had did not pass under the decree and sale.

But we construe the will as giving to the devisees therein named interest in fee, subject to be defeated by their death before a sale was made. When the testator says, "the children of any that may have died taking the portion of the ancestor," we understand him to refer to the children of such as may have died before a sale of the property. After a sale is made, the rights of those then alive became fixed and their title unconditional. It was not, therefore, necessary to make the children of a devisee who was then living a party.

The mere possibility that Mrs. Slaughter may yet be living and claim dower is too remote to justify the appellant in declining to accept the title. Such a defect of title would not warrant the chancellor in rescinding a private contract, and *a fortiori* will not warrant the setting aside of a judicial sale. That the accidental burning of a part of the house after the sale was made will not furnish grounds for setting aside the sale, was decided in *Vance's Adm'r v. Foster & Ray*, 9 Bush 389. The failure of the appellant to do voluntarily, and in proportion, that which he ought to have done, can furnish him with no ground for relief which he would not have had if he had done his duty.

Judgment is *affirmed*.

*Barr, Goodloe, Humphrey, for appellant.*
*Rowan Boone, Bullitt & Bullitt, Harris, for appellees.*