Ball, &c., v. First National Bank of Covington.

---

CASE 94—EQUITY—NOVEMBER 28, 1882.

# Ball, &c., v. First National Bank of Covington.

APPEAL FROM KENTON CHANCERY COURT.

1. Rents accrued before the death of the owner vested in his executor as assets.

2. But rents accruing after his death go to the heirs and devisees until they are divested of the title and right to possession of the land by judgment of the court.

3. A purchaser is entitled to rents from the confirmation of the sale ordered by the court.

80   501
108  882
80   501
e114 719
80   501
e116 522
80   501
e116 522
80   501
·125  844

Ball, &c., v. First National Bank of Covington.

D. T. WRIGHT FOR APPELLANTS.

1. Under the common law there can be no doubt that rents go to the heir, and this rule is not changed by either the statute or Code. (Combs v. Branch, 5 Dana, 547; O'Bannon v. Roberts, 2 Dana, 54; Rank v. Hill, 8 Bush, 66.)

2. The Code of Practice is not a statute granting rights, but one defining remedies for their enforcement.   (Cook v. College, 9 Bush, 541.)

JOHN F. & CHAS. H. FISH FOR APPELLEE.

1. The cases cited by appellants' counsel relate to contests between heirs and personal representatives.

2. If the rents be distributed between the heirs, the creditors can, by action, compel them to refund their value.

3. The entire rents up to the day of sale collected by the executor should be applied to the payment of the debts of the decedent.   (8 B. Mon., 334; Muldoon v. Crawford, 14 Bush, 132; Bullitt's Civil Code, secs. 832, 429, 430, 434, 435, and 436; Story's Eq., vol. 1, secs. 532, 543, 577, 579.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

R. H. Ball made and published his last will and testament, by which he devised certain real estate for the payment of his debts, and devised the remainder of his real and personal estate to the appellants.

The real estate devised to the appellants had been rented by the testator to certain tenants, who were required to pay the rent at the end of every month.

He died on the 21st of April, 1878. His estate devised for that purpose being insufficient to pay his debts, his executor filed a petition in equity on October 8th, 1878, for the purpose of settling the estate and selling the realty to pay the testator's indebtedness.

To the petition the devisees and most, if not all, of the creditors were made defendants.

It was ascertained that the estate was insolvent, and the whole of the real estate was decreed to be sold, and on July 31st, 1879, it was sold, and the sale thereafter confirmed.

Ball, &c., v. First National Bank of Covington.

The controversy on this appeal is between the heirs and devisees, who are the same persons, and the creditors of the testator as to the title to the rents.

The chancellor decreed that the rents which accrued prior to the testator's death, and those which accrued after the institution of the suit by the executor and before the day of sale, belonged to the estate for the payment of debts; but that the rents which accrued after the testator's death, and before the institution of the executor's suit, belonged to the devisees and heirs, and that the rents accruing subsequent to the sale belonged to the several purchasers.

From this disposition of the rent the heirs and devisees have appealed, and the creditors prosecute a cross-appeal.

The rents which accrued before the death of the testator certainly vested in the executor as assets, and were properly applied to the debts of the testator.

Before and since the Revised Statutes, which are the same as the General Statutes on the subject, the common law rule that rents accruing after the death of the owner, in fee of real estate, are not assets which vest in the personal representative, has been in force in this State, those statutes regulating the apportionment of rent between the personal representative and heir or devisee being regarded as merely declaratory of the common law; hence the judgment giving to the heirs and devisees the rents accruing after the testator's death and before suit was undoubtedly correct. (See Rank v. Hill's adm'r, 8th Bush, 67; Comb's devisees v. Branch, 4 Dana, 548; O'Bannon v. Roberts' heirs, 2 Dana, 55; Williamson's adm'x v. The Richardsons, 6 Mon., 603–4; Atchison's heirs v. Lindsey et al., 6 B. Mon., 88.

They complain that this was not enough, but that the court erred in not adjudging to them the rents which accrued after the institution of suit by the executor, and at least before the sale under the decree.

Why the mere institution of the suit operates to deprive the heirs and devisees of the rents accruing thereafter is difficult to perceive.

Before the title and the right to the possession, which devolved on the appellants at the death of their ancestor, have passed from them, there seems to be no logical consistency in recognizing those rights, and at the same time depriving the appellants of the rents growing out of the use of the property to which they attach.

The suit may be depending for years; the insolvency of the estate may not be ascertained until improvements or rents amount to more than the value of the land when it descended or was devised; it would therefore be harsh law that would determine the title and right to the possession to be in the heir or devisee during the making of the improvements and accumulation of the rents, and also deprive him not only of the land or its value, which was all that come to him from the testator, but of the rents and profits which he may have made by its judicious and industrious use, when in law and equity it belonged to him.

An heir is charged with the value of advancements when received by him. There is no statute providing that he shall be bound for rents to the creditor; but there is a statute requiring the heir to pay interest after he may have sold his inheritance on the amount received by him for it, when necessary to pay the debts of the ancestor.

These statutory provisions indicate that the legislature recognized the right of the heir to the rents of property

descended as long as he remains the owner, the statute making him responsible for interest alone after alienation, being one of convenience and necessity, and not in conflict with the principles enounced in this opinion.

If the property descended is being wasted or about to be sold, so as to defeat or delay the creditor of the ancestor, there is ample remedy to prevent either and preserve the property to the satisfaction of his debts, and the remedy afforded by the law on this alternative state of facts is an additional reason for allowing the heir to take the rents so long as he holds the title, and is entitled to the possession.

It is insisted by counsel for the creditors that as the chancellor has jurisdiction for the settlement of the estate, he should maintain it for all purposes, and therefore subject the rents accruing after the death of the ancestor to prevent a multiplicity of suits against the heirs for their aliquot parts.

This argument is founded on a premise which does not exist, but is erroneously assumed, as no action could be maintained for rents thus accruing, and the chancellor has no incidental jurisdiction over the rents, because they are neither legal nor equitable assets of the estate.

At what time the right of the purchasers at the decretal sale to take the rents attaches, and that of the heirs and devisees cease, is necessarily fixed by the same process of reasoning which supports the title to the rents by the heir after the death of the ancestor.

It turns upon the ownership of the right to the title and the right to the possession.

In the case of Castleman v. Belt, 2 B. M., page 160, this court held that a mortgagee purchasing at a decretal sale of the mortgaged property had a right to treat the tenant of the mortgagor in possession, either as tenant or trespasser

after the date of the conveyance to him, and from that date· or demand upon the tenant recover the rents ·from him.

That case, while it determines the right to the rents to be· in the purchaser at decretal sale of mortgaged property after· the deed is made to him, does not negative the right of the purchaser to the rents after the confirmation of the sale of property, where there is no equity of redemption.

It is not therefore assuring authority on the precise· question before us.

In the case of Taliaferro, &c., v. Gay, &c., 78th Ky.,. 498-9, treating of the rights of a purchaser at judicial sale to the subsequently accruing rents, this court said:

"If the rent goes with the legal title, and the right to pos-· session begins and ceases with it, the location of the legal· title and the right of possession at any time determines the· right' to the rents;" and held that the purchaser, being in possession at the date of the *confirmation* of the sale, was. entitled to the rents from that time, as then the legal title and possession were united.

It seems to us that the reason for the rule given by the court is forcibly applicable to the rights of the heirs and purchasers in this case.

For the legal title vested in the heirs or devisees on the death of the testator, and so remained until it was divested. in pursuance of the decree, and they were therefore entitled: to the possession and rents during that period, and as a matter of course the right of the purchasers to the rents does. not attach until that of the heirs and devisees ceases.

The purchaser, from the confirmation, is entitled to a deed and writ of possession, and is bound to pay the purchase-· money, and hazard the accidental destruction of the prop-· erty even from the sale, and he is entitled, therefore, to the·

rent from the date of confirmation, but not from the sale, because he acquires no right to the possession until the sale is confirmed.

Wherefore, the judgment is reversed on the original and affirmed on the cross-appeal, with directions to render judgment in conformity to the principles of this opinion.