## ESTATE OF KATE JOHNSON.

[No. 14,211; decided June 8, 1895.]

**Executor's Sale—Rents Between Confirmation and Delivery of Deed.** The decree confirming an executor's sale vests title in the purchaser, and entitles him to the rents of the property between the time of confirmation and the delivery of the deed.

**Probate Court—Equity Jurisdiction.**—The superior court sitting in probate has authority to apply such equitable principles as will promote justice in all matters actually pending before it.

**Executor's Sale—Payment of Taxes.**—Where an executor makes a sale of property on which taxes are a lien, it is his duty toward the purchaser to remove the lien.

**Executor's Sale—Authority of Court to Administer Equity.**—Where an executor makes a sale of property on which there is a lien for taxes and on which rents accrue between the time of confirmation and delivery of the deed, the superior court sitting in probate has jurisdiction to apply equitable principles as between the vendor and vendee.

The questions in this case involve the liability for taxes and the right to rents between the time of the confirmation of the executor's sale and the delivery of the deed to the purchaser.

Frank Sullivan, for James D. Phelan, purchaser.

Sidney V. Smith and James M. Taylor, for the executor.

Geo. R. B. Hayes, for the minor heirs.

Edgar M. Wilson, for the adult heirs.

COFFEY, J.   The petition of James D. Phelan shows that on a certain date in open court he made an advanced bid of ten per centum exclusive of the expenses of a new sale.   The bid was accepted by the court.   Thereupon Mr. Phelan paid as a deposit $8,140, which is now held by the executor of the Johnson estate.   The court on March 25, 1895, confirmed the sale to Mr. Phelan.   A deed has been offered by the executor, but Mr. Phelan refuses to accept the same for many reasons, among them:

1. That he was and is entitled to an allowance or payment of the rents of the property from March 25, 1895, to date.

2. That the taxes of 1895 were and are now a lien on the property of the estate, and he should be allowed a deduction for said taxes in his settlement with the executor.

Both parties have asked the court to rule upon the propositions involved.

The points of both propositions were, in principle, dealt with and decided in an informal manner recently in the Estate of Martin Kelly, but the discussion now is deeper and broader; although the conclusion reached in both cases is the same, the reasoning here is more satisfactory, and the result so well established by authority that the executor acquiesces, by advice of his counsel, and will not question the obligation of the estate to pay the taxes now a lien on the property purchased by Mr. Phelan, and relinquishes all claim to the rents since confirmation of sale.

The superior court sitting as a court of probate can carry into effect all its mandates and proceedings even if the statute be silent as to the methods to be pursued: Const., sec. 5, art. 6.

It is true that its jurisdiction is separate and distinct from the jurisdiction of such court in a civil action: In re Allgier, 65 Cal. 228, 3 Pac. 849.   But the power to afford relief *during and pending* administration is conceded: Estate of Hudson, 63 Cal. 457.

But within the field of its jurisdiction as a probate court the superior court has full and plenary powers: 1 Woerner's American Law of Administration, sec. 144.

In Schouler on Executors, section 13, note on page 18, it is said: "The doctrines which relate to probate jurisdiction should be studied in connection with the general subject of chancery powers. The English decisions afford much light on the topic; yet it should be borne in mind that probate jurisdiction in the United States differs greatly from the English ecclesiastical jurisdiction, as understood prior to the independence of the American colonies. Our American probate system is more comprehensive than that of England, and rests more firmly upon separate state enactments and the judicial exposition of those state enactments."

In this state the supreme court has held that "the superior court in the exercise of its probate jurisdiction proceeds upon the *principles of equity,* and may so frame its judgments as to do exact justice in regard to all matters properly entering into the account of the administrator": Estate of Moore, 96 Cal. 529, 31 Pac. 584. See, also, Matter of Niles, 113 N. Y. 547, 21 N. E. 687, which is cited with approval in Re Moore, where the court said: "In the exercise of the statutory powers conferred upon him to direct and control the conduct and settle the accounts of administrators and executors, the *surrogate is not fettered,* nor is he permitted by any rule of law from doing exact justice to the parties. He is supposed to administer justice in each case within his jurisdiction, according as the equities of the case demand, within the confines only of statutory provisions."

Two propositions are here submitted:

1. That the legal title vested in the purchaser at the time of confirmation; if it did not, the equitable title passed, and in either event the rents were payable to the vendee. It is scarcely necessary to discuss whether the sale by the executor under the Johnson will, which gave him power to sell, ended with his return to the probate court, and the act of the probate court in accepting bids made it a judicial sale. It is certainly an interesting question, but it has really no bearing upon the question of the equities of vendor and vendee in the present case.

(A) The legal title vested in petitioner at the time of confirmation.

There is no express provision of the code in reference to this subject. In section 1554, Code of Civil Procedure, it is provided that the sale from the time of confirmation is confirmed and valid, and a certified copy of the order confirming it and directing conveyances to be executed must be recorded in the office of the recorder of the county within which the land sold is situated; also that if the purchaser does not comply with the terms of the sale and the court orders a resale and a deficiency ensues, the purchaser *is liable* for such deficiency.

Then the next section, 1555, Code of Civil Procedure, provides that conveyances must thereupon be executed to the purchaser by the executor or administrator, and in such conveyance reference must be made to the orders of court authorizing and confirming the sale. It then provides that the conveyance so made conveys all the right, title, interest and estate of the decedent in the premises at the time of his death: Code Civ. Proc., secs. 1554, 1555.

The meaning of these sections clearly is, that the title has vested in the vendee by the order of confirmation, and the deed is nothing more than the act of an officer of the court pursuant to a decree. In fact, the deed must refer to the orders authorizing and confirming the sale: Code Civ. Proc., sec. 1555.

He may be punished for misconduct in delaying a return of sale: Code Civ. Proc., sec. 1575.

He cannot purchase himself directly or indirectly: Code Civ. Proc., secs. 1576, 1617.

In fact, all the proceedings of an executor are controlled by the probate department; so much so that it can compel the execution of a conveyance: In re Lewis, 39 Cal. 306.

The proceedings in case of a probate sale are similar to these under the order of sale in partition: Code Civ. Proc., secs. 785, 787, 1682-1686.

It may be fairly deduced from a liberal reading of the statute that the decree of confirmation vests title in the purchaser and, it is submitted, entitles him to the rents, if any.

Some authorities go further and hold that confirmation, payment and deed carry title *by relation* back to the time of the sale and vests the title in the purchaser at that time.

In Rorer on Judicial Sales it is said in section 109: "But confirmation when made by the court, though subsequent to the day of sale, relates back to the date of the sale, if the date of the sale is apparent of record or in the deed, and carries title as from that date": See, also, Rorer on Judicial Sales, secs. 151, 366.

In Evans v. Spurgin, 6 Gratt. (Va.) 107, 52 Am. Dec. 105, it was held that although a decree directing commissioners to sell the land did not authorize them to execute a deed to the purchaser, yet as they did execute the deed and the court, by its final decree, satisfied and confirmed it, this order gave full effect to deed and related back to time of its date, so as to invest purchaser with legal title.

In Taylor v. Cooper, 10 Leigh (Va.), 317, 34 Am. Dec. 437, where on October 30, 1834, decree for sale was made, and on January 10, 1835, sale took place under decree, and the sale was confirmed and a conveyance executed to the purchaser. Held, that the purchaser must be considered *complete owner* from the *date* of the sale and entitled to the *rent* which became due afterward.

Hunter v. Hatton, 4 Gill (Md.), 115, 127, 45 Am. Dec. 117, says: "This deed (under judicial sale), however, does not operate to pass the freehold, merely from the time of its execution, but being a conveyance under a judicial sale upon the principles of relation, it operates retrospectively, and vests the freehold estate in the premises in the grantee from the date of sale": See Viner's Abridgment, tit. "Relation," 90.

In Bellows v. McGinnis, 17 Ind. 64, 66, where there was *a probate sale* under order of court, the court say: "We think it clear that when this deed was executed it *related* back to the time when the *sale was confirmed,* and the deed ordered so as to invest in power the same rights as if the deed had been then executed and delivered. The title might take effect by relation *from date of sale*": Jackson v. Ramsey, 3 Cow. 75; Landers v. Brant, 10 How. 348, 13 L. Ed. 41; Smith v. Allen, 1 Blackf. (Ind.) 22.

In Wagner v. Cohen (1847), 6 Gill (Md.), 97, 45 Am. Dec. 660, it was held that a ratification retroacts, and the purchaser is regarded by relation as the owner from the *period of sale.*

He is entitled to the *intermediate rents and profits,* and he cannot escape from the sale, because disadvantageous.

In the Succession of Massey, 46 La. Ann. 126, 15 South. 6, it was held that the adjudication by the auctioneer of land under sale by order of court in the execution of a will gives the purchaser a *complete title,* though the executor dies pending the proceedings.

(B) If the legal title did not pass by confirmation to the purchaser the equitable title did, which carried with it the right to rents, and made the vendor a trustee for that purpose.

Section 1554, Code of Civil Procedure, fixes the legal liability of the purchaser. If he neglects or refuses to complete the sale, the court may order a resale, and if thereafter a deficiency ensues, he is liable. He may be compelled after confirmation of sale to complete his purchase: Maul v. Hellman, 39 Neb. 322, 58 N. W. 112.

It is doubtful whether *before* confirmation the purchaser has an insurable interest. But it is well settled that after confirmation he has such an interest, and in the event of destruction of the property the loss will fall on him.

In Rorer on Judicial Sales, section 10, it is said: "Before such confirmation the purchase is so incomplete that a loss by fire falls on the vendor or owner, though it occur after acceptance of the bidding, and after the report of sale": Citing Wagner v. Cohen, 6 Gill, 97, 45 Am. Dec. 660; Ex parte Minor, 11 Ves. 559.

On the other hand, "after confirmation, however, the loss is on the purchaser, and he is bound to complete and execute the terms of the purchase": Rorer on Judicial Sales, sec. 12; citing 2 Daniells' Chancery Practice, 1452 et seq. See, also, Rorer on Judicial Sales, sec. 11.

On this point the authorities are numerous. In Ball v. First Nat. Bank, 80 Ky. 501-506, the court says: "The purchaser from the *confirmation* is entitled to a deed and writ of possession, and is bound to pay the purchase money, and *hazard the accidental destruction* of the property *even from the sale,* and he is entitled, therefore, to the rent from the date of confirmation, but not from the sale, because he acquires no right to the possession until the sale *is confirmed."*

In Twigg v. Fifield (1807), 13 Ves. 517, it was held that the sale of an annuity before the master takes effect from the confirmation of the report. Lord Eldon said: "In Sir Ashton Lever's case the purchaser was considered as having the benefit of the purchase from the time at which he agreed to have it; and in a late case, where part of the premises was burned, I considered the purchaser as having the purchase from the *confirmation* of the report."

In Ex parte Minor, 11 Ves. 559, where a lunatic's property was sold on February 9, 1805, and on February 26th petition for confirmation was filed, and on February 28th before order of confirmation premises were burned, it was held that a purchase before the master is not complete before confirmation of the report, and that therefore a loss by fire *after the report,* but *before confirmation,* falls upon the vendor, and the circumstances that the sale had been delayed by the purchaser having opened the biddings was not attended to.

Lord Chancellor Eldon said: "The question must depend upon the point, what is the date and time of the contract at which it can be said to be complete? Is the bidding in the master's office the contract between the court and the bidder, or only an authority to the master to report to the court, and if the court approves, the court may make a contract with him upon the terms proposed? Let the master certify to me what were the conditions of the sale, and what has been the deterioration in value by the fire, and reserve the question; for, although the sum is not large, the question is one of the most considerable that has occurred for some time. In some of the cases that have been cited, the change of property is said to be from the *date* of the report; in others from the *time* of the conveyance; so that, though *confirmed* as the best purchaser, if he had not got the conveyance he would have been entitled to say the estate was not his. That cannot be according to the principle.

"Suppose the person had insured the premises, while in the master's office, from fire, would he, according to the cases in late times have had an insurable interest? His interest is not near so thin as many that have been considered insurable."

In Armstrong v. McClure, 4 Heisk. (Tenn.) 80, it is held that the legal title vests upon confirmation.

From these citations it is clear that all the burdens of ownership fall on the purchaser. Surely it cannot be argued because the statute is silent on the subject of rents accruing after confirmation, for that reason only, the probate court cannot apply equitable principles between vendor and vendee in carrying out its decrees. The decisions of this state allow probate courts in all matters actually pending and undetermined and within the sphere of their jurisdiction to apply such equitable principles as will promote justice: Estate of Moore, 96 Cal. 529, 31 Pac. 584.

Any contrary doctrine would permit the probate court to be shorn of all power except what was directly conferred upon it in the very *words* of the statute. Hence, the authorities cited have been taken from the decisions of courts of equity in cases somewhat analogous to the matter now at issue.

Even if these cases may not be accepted as authority, they are certainly strong arguments that a certain course of practice is proper in matters between vendor and vendee, whether the sales be judicial in their character or made under a power of will.

In England and in many parts of the Union where chancery sales are in vogue, the result in equity of a contract of sale is that the vendor is considered a *trustee* of the land for the vendee, who is likewise regarded as a *trustee* of the purchase money for the former. From whence it follows that the purchaser is entitled *to the rents and profits of the estate from the date fixed for the completion of the contract:* Martindale on Conveyancing, sec. 9 (citing Seton v. Slade, 7 Ves. 265; Champion v. Broan, 6 Johns. Ch. 398; Springle v. Shields, 17 Ala. 297).

Warvelle on Abstracts, page 268, says of administrators' sales: "The purchaser has no right to the land until the sale has been confirmed, but where the sale has been made under a proper order of court, and reported to and confirmed by it, it *conveys title* even though the proceedings have been irregular."

In Lannay v. Wilson, 30 Md. 536, 549, it is said: "A purchaser under a decree in equity becomes the substantial owner of the property from the moment of *final ratification* of the sale, and he is entitled to and *can recover the rents and profits of the estate.* He is not only entitled to the possession of the property, but it remains at his risk, notwithstanding the legal title may not be conveyed."

By such a sale the dry legal title and the right of possession often becomes completely severed, at least for a time— the legal title remaining in some of the parties to the cause, while the *equitable estate and right* of possession become vested in the purchaser: See, also, Casey's Lessee v. Inloes, 1 Gill (Md.), 503, 39 Am. Dec. 658; England v. Slade, 4 Term Rep. 682; Armstrong v. McClure, 4 Heisk. (Tenn.) 80; Rall v. First Nat. Bank, 80 Ky. 501.

On the other hand it is held that a purchaser at a chancery sale who fails to comply with its terms is not entitled to the rents of the property accruing during the interval between the sales or to the excess over his bid realized at a resale: Chase v. Joiner, 88 Tenn. 761.

The same rule applies in partition suits. When the sale has been reported back and confirmed the title vests in the purchaser. Thus in Clason v. Corley, 5 Sandf. (N. Y.) 447, 453, it is held: "In partition suits, the practice requires the sale to be reported to the court, and *confirmed* before a deed can be given. In such cases it has been held that after the sale has been regularly confirmed, and the purchase money paid, the equitable title thereupon vests in the *purchaser,* although the execution of the deed does not take place on such payment: Gates v. Smith, 4 Edw. Ch. (N. Y.) 702. The practice in suits for partition is like that in England in all sales under decrees of the court of chancery, and the contract of sale is not deemed complete, until the *master's report of the sale is absolutely confirmed* (1 Sugden on Vendors, 58; 2 Dan. Ch. R. 909, 917), and until such *confirmation the purchaser* is not considered, even in equity, as entitled to the benefit of his contract."

Somewhat analogous is the case of the purchaser at an execution sale. Under the statute, "from the time of sale until

redemption . . . . he is entitled to receive from the tenant in possession the rents of the property, or the value of the use and occupation thereof'': Code Civ. Proc., sec. 707. The purchaser can maintain an action for rent before the expiration of the time allowed for redemption: Reynolds v. Lathrop, 7 Cal. 43.

He has a leviable interest: Page v. Rogers, 31 Cal. 301.

''The purchaser acquires a conditional equitable estate which may become absolute by lapse of time. The legal title remains in the judgment debtor with the further right in him and his creditors . . . . to defeat the operation of a sale already made during a period of six months, after which the equitable title acquired by the purchaser becomes absolute and indefeasible, and the mere dry, naked, legal title remains in the judgment debtor with authority in the sheriff to devest it by executing a deed to the purchaser'': Simpson v. Castle, 52 Cal. 644.

In this last instance there is a complete separation of the legal and equitable title.

In Harris v. Reynolds, 13 Cal. 514, 73 Am. Dec. 600, an action by the purchaser at foreclosure sale to recover the rents and profits was upheld. It was there said: ''There is no compulsion upon the part of the debtor to redeem if he is able, and if he does not, the purchaser runs the risk of the title, the depreciation or destruction of the property, and in fact all the risk attending the ownership of the property. As the *law holds him to the responsibilities of owner, it entitles him to the benefits of owner so far as the right to the profits is concerned.*'' Cited with approval in Hardy v. Herriott, 11 Wash. 460, 39 Pac. 958.

The last words of the decision seem naturally to sum up the case of the petitioner and to present in a terse way the propositions involved. There is no doubt in the mind of the court that the authorities cited state the law, and point out unmistakably that petitioner is legally and equitably entitled to the rents as prayed for.

The taxes of 1895 were at the time of the sale, and are now, a lien on the property of the estate.

The sale was confirmed on the twenty-fifth day of March, 1895. Before that time the taxes for state and municipal purposes became a lien on all real and personal property: Pol. Code, sec. 3717; Const. 1879.

This tax has the effect of a judgment against the person, and the lien created thereby has the force and effect of an execution, and the judgment is not satisfied nor the lien removed until the taxes are paid: Pol. Code, sec. 3716; Cowell v. Washburn, 22 Cal. 520; Yuba Co. v. Adams, 7 Cal. 35; San Francisco Gas Co. v. Brickwedel, 62 Cal. 645.

Besides, no order or decree for distribution can be permitted until all the taxes against the estate are paid. Moreover, it is the duty of the superior court to require the administrator or executor to pay out of the *funds of the estate* all taxes due from such estate: See, also, Code Civ. Proc., sec. 1669.

Whether levied or not the tax lien exists and must be paid: Estate of Whartenby, 2 Cof. Pro. Dec. 509.

Again, the statute requires the executor or administrator after any sale is made to apply the purchase money to the payment of the mortgage or lien: Code Civ. Proc., sec. 1569.

If the lien of taxes exists, the purchaser is not required to take the property. He buys a title free from encumbrances.

In George v. St. Louis etc. Ry. Co., 44 Fed. 117, it is held that when federal courts have appointed receiver to sell, and during his possession levy might have been made on property, court will *direct payment of taxes out of proceeds of sale in preference to all other claims* though the sale was ordered to be made "subject to all liens for taxes."

There is, therefore, no escape from the position that if a lien exists it is the duty of the executor to remove it.

It is within the power of the superior court sitting *in probate* to grant the prayer of petitioner.

Granted.