CASE 49—ACTION TO ENFORCE TAX LIEN—APRIL 27.

# German Bank v. City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  AFFIRMED.

TAXATION—JUDICIAL SALES—LIABILITY FOR TAXES ASSESSED BEFORE SALE CONFIRMED—EXEMPTIONS.

Held:  1. As the purchaser of land at judicial sale is not entitled to rents and profits before the confirmation of the sale, he is not liable for taxes assessed before that time under a city charter providing that the assessment may be made against "the owner or holder;" and therefore, though the property of a bank was exempt by statute from city taxation, land purchased by it at judicial sale was subject to a lien for city taxes assessed before the sale was confirmed, the assessment having been made before it became "the owner or holder" of the property.

2. A statutory exemption from taxation should not be extended beyond its plain letter.

BARNETT AND BARNETT ATTORNEYS FOR APPELLANT.

1. The purchaser at a decretal sale, and not the vendor, is liable for the taxes thereon, which accrued after the sale, but before

its confirmation. Vance v. Foster, 9 Bush, 389; McLean v. Hartford Fire Ins. Co., 1 Selden, (N. Y.), 151; Hughes v. Swope, 88 ·Ky., 257.

2. The bank having paid its taxes for the year 1891, under the Hewitt Bill, its property is not liable for the taxes assessed by the city of Louisville and sued for in this action.

H. L. STONE, CITY ATTORNEY FOR APPELLEE.

1. The purchaser at a decretal sale is merely a preferred bidder until the report is confirmed, which was not done in this case.
2. Such purchaser not having the title, is not entitled to possession or rents, and therefore not liable for taxes.
3. A lien for taxes is superior to homestead right and all other incumbrances. Burnett's City Code, Title Taxation, sec. 5, page 766, sec. 9, page 773, sec. 24, page 783, sec. 38, page 788; Civil' Code of 1877, sec. 773; Rogers v. Rogers, 47 S. W., 701; Ball v. First Nat. Bank of Covington, 80 Ky., 501; Elliott v. Bush, 3 R.. 466; Brown v. Berkley, 3 R., 369; Morris v. Mann, 4 R., 734; Townsley v. Moberly, 5 R., 249; Taliaferro v. Gay, 78 Ky., 496; General Statutes, art. 2, chap. 92, title "Revenue and Taxation," pages 1039, 1041; C. O. & S. W. R. R. Co. v. Grayson, 8 R., 877; Commonwealth v. Gaines, 80 Ky., 489; Vance v. Foster, 9 Bush, 389; Hughes v. Swope, 88 Ky., 257.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

The appellant bank, at a judicial sale under judgment of the Louisville Chancery Court, became the purchaser of a lot of land in Louisville, Ky., on August 4, 1890. Under the charter of the city in force in 1890-91, assessments of all lands in the city were required to be made as of the 1st day of September in each year. Act May 12, 1884 (Burnett's Code, p. 766, sec. 5). There was a provision that the assessment of such property might be either against the owner or holder. Id. p. 773, sec. 9. This would seem to be a provision to prevent assessments being held void by reason of transfers of the title unknown to the assessor. It was further provided (Id. p. 783, sec. 24): "The fee simple of all lands in the city of Louisville, and the full term and renewal right of every leasehold, carrying

with it the value of the improvements thereon, shall be subject from and after the first day of September of each year, to a lien for the city tax to be assessed thereon for the succeeding year, which lien shall be superior to homestead right and to all incumbrances, whether made before or after that date, except State taxes, and shall take precedence of dower, curtesy, remainders, reversions, or future estates," etc.

On November 19, 1890, the sale, which had been reported by the commissioner to the court, was confirmed. The assessment was made in the names of Mary C. Best and others, who were the former owners, and the appellee city brought suit to enforce its lien upon the property for its tax bill of 1891, amounting to $322.79, making appellant bank defendant. Appellant answered, alleging that it was a banking corporation of this Commonwealth; that it had accepted the provisions of the act of the General Assembly approved May 17, 1886, and commonly known as the "Hewitt Bill," in due time, and given its consent to the levying of the tax provided in that law in due form, as thereby provided; that on the 1st day of July, 1886, and on the 1st day of each succeeding year, it had reported to the Auditor of Public Accounts the true amount of its surplus, undivided profits, or accumulations, and how or in what said surplus, undivided profits or accumulations were invested, and had paid into the treasury of the State the amount of tax due thereon as provided 'n said act, which reports were verified as required by the act, and that appellant had paid to the Commonwealth in each of said years 75 cents on each share of its capital stock equal to $100, and, in addition, had paid the State in each of said years, upon each $100 of so much of its undivided surplus, undivided profits, or undivided accumu-

lations as exceeded an amount equal to 10 per cent. of its capital stock, the same rate of taxation that was assessed upon real estate, which payments were in full of all tax, State, county, and municipal; that by the confirmation of its purchase on November 19, 1890, it had become vested with the title of the land in question as of the 4th of August, 1890, and that the land has never been used by it for conducting its business. Appellant further averred that by reason of the facts set up the lands were exempt from assessment and taxation. By amendment, the bank further pleaded that a deed had been executed to it by the commissioner, the purchase price paid in full into court, and the lien retained released. A demurrer to the answer as amended was sustained, and judgment entered directing a sale of the land to enforce the city's lien for the taxes for 1891.

The sole question to be disposed of is, whether the vendor or the purchaser at the judicial sale is liable for the taxes upon the land sold which accrued after the sale, but before its confirmation. For appellant it is earnestly contended that the purchaser is liable, and that in this case the purchaser paid certain taxes to the State in lieu of city taxes, and the property so purchased was exempt from taxation by the city. Two cases in this State are relied on in support of this proposition. In Vance's Adm'r v. Foster, 9 Bush, 389, certain machinery was purchased at a decretal sale, and the purchasers agreed to but did not then execute bond for the amount of their purchases. Before they complied with the terms of the sale, the most valuable part of the machinery was accidentally destroyed by fire, and they afterwards refused to give bond. Upon rule against them to comply with the terms of sale, this court held: "That the sales to appellees being such,

when made, as would entitle both parties to have them confirmed, they at that time operated to vest in the appellees an inchoate title, which the court might by its order of confirmation complete, as of the date of the sales, and thus, by adjudging the property to have belonged to the appellees, have allowed the accidental loss to have fallen on them. As for any sufficient cause for setting the sales aside, they might have been annulled from their date; this court thus determining the ownership of the property, and consequent liability to loss, not to have been changed by the sale. . . . We know of no principle of practice which would authorize a court of equity to hold that the rights and liabilities of these parties were so changed or impaired by such a casualty or misfortune as to entitle the purchaser to shift the loss from himself to the original owner by electing to avoid the sale." In Hughes v. Swope, 88 Ky., 257 (1 S. W., 394), in an opinion by Judge Bennett, the court held that this court had jurisdiction of an appeal by a purchaser of decretal sale from a judgment setting aside the sale at which he purchased, although his bid was less than $100; because, by his purchase, he became vested with an equitable title, and this court has jurisdiction where either the legal or equitable title to land is involved. Said the court: "While it is, in a sense, true that the purchaser at a decretal sale is a preferred bidder until confirmation by the court, which bid may be rejected by the court for cause shown at any time before the confirmation, yet it is not true that he acquires no equities by his purchase. He does acquire a vested equitable title to the land from the time of his purchase until the confirmation, and by confirmation his title becomes perfect from the date of his purchase," etc. But it is obvious, in the light of numerous decisions of this court not

in any case overruled or questioned, that this broad state-
ment of the doctrine must be taken with some limitations.
In the same case one of these limitations was stated, for
the court says: "The purchaser acquires his equitable
title to the property purchased at a decretal sale from the
time of the purchase, subject only to the right of defeas-
ance by the court for such causes as above indicated." It
has been held again and again by this court, and followed
in several cases by the Superior Court, that the purchaser,
while he may be compelled to comply with the terms of
sale, notwithstanding deterioration in value or loss by
accident, has neither right of possession nor profits until
confirmation. He is not entitled to rents between the
date of sale and date of confirmation. Ball v. Bank, 80
Ky., 501; Talliaferro v. Gay, 78 Ky., 496; Elliott v. Bush,
3 Ky. Law Rep., 466; Brown v. Berkley, Id., 369; Morris
v. Mann, 4 Ky. Law Rep., 734; Townsley v. Moberly, 5 Ky.
Law Rep., 249. And so, after all, the question reduces
itself to one of statutory construction.

The appellant bank had an equitable title to the ex-
tent that it could be compelled to accept the legal title
in spite of deterioration or accidental loss, and so as to
give this court jurisdiction of an appeal from a judgment
affecting its rights as purchaser irrespective of the amount
of its bid. On the other hand, it acquired no right of
possession of the property, nor any claim to the rents and
profits thereof from the date of sale; nor did the confirma-
tion which vested it with the legal title as of the date of
sale give it any right to rents and profits before such con-
firmation. Was it, then, within the meaning of the city
charter, the owner or holder of the property? The ques-
tion is a very narrow one, but we have reached the con-
clusion that it was not. Within the meaning of this stat-

German Bank v. City of Louisville.

ute, a title which is insufficient to give right of permanency of rents and profits is, in our opinion, insufficient to impose liability to taxation. The case of Rogers v. Rogers (Tenn. Sup.), 47 S. W., 701, which decides that the vendor, and not the purchaser at decretal sale, was liable for taxes accruing between sale and confirmation, holds, it is true, that no title vests in the purchaser until confirmation, but seems to base the decision upon the fact that the purchaser "is not entitled to either possession or rents until after confirmation." If the confirmation vested appellant with title as of the date of sale in such manner as to make the bank, as of that date, owner or holder of the property within meaning of the statute, it would not take it burdened with the tax, for at date of sale no tax had been assessed. But we do not think at that date it was either owner or holder of the property within meaning of the statute. We are confirmed in this conclusion by the fact that ample remedy by deducting the amount of tax from unpaid purchase money was afforded appellant by Civil Code of Practice, section 773. It may be added that the exemption claimed under the Hewitt law, being a statutory exemption from taxation, should not be extended beyond its plain letter. For the reasons given, the judgment is affirmed.