## Kelly's Ex'or, et al. v. Pettus, et al.

(Decided November 2, 1911.)

### Appeal from Christian Circuit Court.

Rents—Death—Personal Representative—Heirs—Devisees—In a long line of cases this court has held that upon the death of the owner of land the right to the rents vests not in his personal representatives, but in his heirs or devisees unless the owner leaves a will which provides to the contrary. Held, that the same rule applies to an administrator with the will annexed.

SELDEN Y. TRIMBLE, TRIMBLE & BELL for appellants.

R. O. HESTER, J. B. ALLENSWORTH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

John Pettus died a resident of Christian County, Kentucky, in the year 1849. He left a last will and testament by the terms of which he devised to his wife, in fee, a half interest in a 341 acre farm; the other half he devised to her for life, and directed that at her death the latter half interest be sold on credit of one and two years and the proceeds be given for the support of the ministers which the Concord Church might from time to time call. He further provided that, in the event the Concord Church should become extinct, the money bequeathed for its benefit should be given to the Colonization Society to be used in transporting his slaves to some colony in Africa. By a codicil he gave his slaves to his wife, to do with them as she pleased, but expressed the belief that she would carry

out his wish in regard to sending to Africa those who were worthy and were acceptable to said Colonization Society. His wife was appointed executrix of the will. Upon the death of the testator, his wife took possession of the farm in question and continued to occupy it until her death in 1892.

Following the death of her first husband, Mariah Pettus first married a man named Evans, who soon died. She then married Edwin F. Kelly, father of appellant, Walter Kelly. She, too, left a will, by the terms of which she invested her executor with full power and authority to sell and convey her one-half interest in the 341-acre farm devised to her by the will of her first husband. At the same time she gave to her husband, Edwin F. Kelly, the right to use and occupy and enjoy the rents and profits of all the real estate of which she died possessed, and provided that the executor should not sell any of her land during the lifetime of her husband, unless he should consent thereto in writing. As soon as practicable after her husband's death, she directed that the land be sold, with the exception of one acre of ground which she directed should be set apart and reserved for a burying ground, and which she gave to the heirs of her first husband, John Pettus. After providing that the sum of $100.00 be set apart for the purpose of keeping up this graveyard, and devising to her servant, Nancy Smith, the use of the house where Nancy then lived and twenty-five acres of ground, she devised to the trustees of the First Presbyterian Church at Hopkinsville all of her cash and other property that remained in the hands of her executor, or that might be received by him, including the proceeds of her real and personal property and any money that might be realized from any other assets of her estate. She also appointed Joseph I. Landes her executor. By a codicil she subsequently revoked the appointment of Landes, and appointed Walter Kelly as executor.

This action was brought by Ed H. Pettus and others, as heirs of John Pettus, against Walter Kelly, individually, and as executor of Mariah H. Kelly, deceased, and the First Presbyterian Church of Hopkinsville and W. H. Davidson and others, trustees of said church, to recover an undivided one-half interest in the 341-acre tract of land, and one-half of the rents and profits of the land accruing after the death of Mariah Kelly. The petition charges that, shortly after the war, the Concord Church

burned, and said church organization ceased to exist and became extinct. It is also averred that none of the slaves belonging to John Pettus were worthy or acceptable to the Colonization Society, and that none would go to Africa; that his widow did not elect to free or send them to Africa, and that during the Civil War the Government of the United States freed the slaves, and the Colonization Society ceased to exist. Plaintiffs asked that they be adjudged the owners of an undivided one-half interest in the land in question, and, charging that it could not be divided without materially impairing its value, asked that it be sold and the proceeds thereof divided between the plaintiffs and the defendants. The allegations of the petition were denied, and the defendants pleaded the thirty and fifteen years' statutes of limitation in bar of plaintiffs' right of recovery. They also pleaded the five years' statute of limitation in bar of platintiffs' right to recover rents and profits.

Upon submission of the case the Chancellor adjudged that plaintiffs and defendant First Presbyterian Church of Hopkinsville, Ky., were joint owners of the farm in question, and that the farm could be divided into two tracts without impairing its value. He then directed a sale of the Kentucky tract. He also adjudged that plaintiffs were entitled to recover of Walter Kelly the net half of all rents collected and of all timber sold by him from the land since March 6th, 1899, which was five years prior to his appointment as administrator, with the will annexed, of John Pettus, deceased, and directed that the case be referred to the master commissioner to determine the amount thereof, which was afterwards fixed at $1,008.12. From the judgment so entered this appeal is prosecuted.

It is not seriously contended that the title to the land did not vest in plaintiffs; hence it will be unnecessary to discuss this question. We are asked, however, to hold that the plea of the thirty and fifteen years' statute of limitation is sufficient to defeat a recovery by plaintiffs.

For the defendants, it is insisted that the plaintiffs' right to an undivided one-half interest in the land in question became vested when the Concord Church ceased to exist and the Colonization Society failed; that they could then have established their right to the property, and, having failed to do so, the thirty years' statute of limitation bars their claim. While it may be true that plaintiffs might have established their right to the prop-

erty during the continuance of the life estate, they could not have established a right of entry or of possession until the particular estate terminated. This is the rule between life tenant and remaindermen to which the relation between the life tenant and plaintiffs is analogous. (Jeffries, et al v. Butler, 108 Ky., 531, and cases cited.) The life tenant's holding in this case was at all times amicable. Even in her last will and testament she recognized the fact that her husband had conveyed to her the fee in only one-half of the land in controversy and this one-half she directed to be sold and the proceeds applied in a certain way. That being true, the statute did not begin to run until her death.

Upon her death it appears that her husband and son took possession of the land. Upon her husband's death her son continued in possession. There is nothing whatever to show that he held adversely to the heirs of John Pettus. On the contrary, on March 26, 1904, within twelve years from the time of the death of the life tenant, Mrs. Kelly, he, as her executor, and the trustees of the First Presbyterian Church of Hopkinsville, by J. I. Landes, one of their number, and their attorney, appeared in the County Court of Christian County. Thereupon an order was entered reciting the fact that John Pettus, deceased, had devised to Mrs. Mariah H. Pettus, his widow, in fee simple, one-half of his farm on which he resided, containing about 341 acres, and that he devised to said Mariah H. a lifetime estate in the remainder or other half of said farm. The order further recites that Mariah H. Kelly, deceased, had by her last will and testament directed that her one-half interest in said farm be sold by her executor and the proceeds paid over to the trustees of the First Presbyterian Church of Hopkinsville. The order then proceeds to set out the fact that, on motion of Walter Kelly and of the trustees of the First Presbyterian Church of Hopkinsville, Walter Kelly was appointed administrator de bonis non with the will annexed of said John Pettus, deceased, and that said Walter Kelly, being then in open court, duly qualified by taking the oath and executing the bond required by law. Here, then, is an admission of record both on the part of Walter Kelly and of the trustees of the First Presbyterian Church of Hopkinsville, that the only estate devised by Mariah Kelly to the First Presbyterian Church of Hopkinsville was an undivided one-half interest in the property in question. This and other testimony in the

case shows conclusively that neither the church nor Walter Kelly ever claimed or held the land in controversy adversely to the claim of plaintiffs. That being true, the fifteen years' statute of limitations is not available as a defense.

There is some contention that, because Mrs. Kelly devised one acre of ground to John Pettus' heirs and directed that it be reserved as a graveyard, they cannot claim both under and against the will, and are, therefore, not entitled to recover the property. It is only necessary to state the proposition to show that there is no merit in it. Plaintiffs, in seeking to recover the land in question, are not asserting a claim either under or against the will. They are permitted to recover because the objects of the testator's bounty had ceased to exist, and the title to that portion of the estate then vested in them as heirs of John Pettus.

We conclude that the chancellor properly adjudged plaintiffs to be the owners of an undivided one-half interest in the tract of land in controversy.

The defendants contend that the chancellor erred in adjudging the plaintiffs a recovery of any rents or profits accruing for more than five years before the institution of this action. In a long line of cases, this court has held that, upon the death of the owner of land, the right to the rent vests not in his personal representative, but in his heirs or devisees unless the owner leaves a will which provides to the contrary. Thus, in the case of Ball, &c. v. First National Bank, 80 Ky., 501, the court, in holding that rents accruing after the death of the testator vests in the devisees and not in the executor, said:

"Before and since the Revised Statutes, which are the same as the General Statutes on the subject, the common law rule that rents accruing after the death of the owner in fee of real estate, are not assets which vest in the personal representatives, has been in force in this State, those statutes regulating the apportionment of rent between the personal representative and heir or devisee being regarded as merely declaratory of the common law; hence the judgment giving to the heirs and devisees the rents accruing after the testator's death and before suit was undoubtedly correct. (See Rank v. Hill's Admr., 8 Bush, 67; Comb's devisees v. Branch, 4 Dana, 548; O'Bannon v. Robert's heirs, 2 Dana, 55; William-

son's Adm's v. The Richardsons, 6 Mon., 603-4; Atchison's heirs v. Lindsey, et al., 6 B. Mon., 88.)''

Of course, the same rule would apply to an administrator with the will annexed. That being true, the right to the rents and profits from the land in question vested in the plaintiffs immediately upon the death of the life tenant, Mrs. Kelly. Walter Kelly, as administrator with the will annexed of John Pettus, deceased, was not entitled to receive that portion of the rents belonging to plaintiffs. Not being entitled to receive the rents and profits, he held them upon an implied contract to pay them to the party entitled thereto. In such a case the right of action is barred after the lapse of five years. (Kentucky Statutes, Sec. 2515.) We, therefore, conclude that the chancellor erred in adjudging a recovery of any rents and profits received by Kelly more than five years prior to the institution of the action.

For this reason, alone, the judgment is reversed and cause remanded for proceedings consistent with this opinion.