## FANNIE W. CROPPER

*v.*

## NELLIE BROWN et al.

[Decided December 10th, 1909.]

1. The only office of a written objection to the confirmation of a sheriff's sale in foreclosure, under act March 12th, 1880 (*Gen. Stat. 1895 p. 2111 § 45*), and court rule 205, is to urge the overthrow of the sale on the sole ground that the property did not bring the highest and best price obtainable, and an attack on the sale on any other ground must be made the basis of an independent action by bill or petition, and any effort by the purchaser to be relieved of his purchase must be by an independent proceeding, and may be by petition filed before the date fixed for the confirmation of the sale.

2. The court, on the hearing of the petition by the purchaser at a mortgage foreclosure sale to be relieved of his purchase, filed before the date fixed for the confirmation, must treat the sale as if it were, or were about to be, confirmed in the absence of anything to show that the property did not bring the best price obtainable.

3. A purchaser at a judicial sale is invested with a definite legal right, recognized and enforced by law, and of which he cannot be deprived except on some legal or equitable ground, and in those cases in which confirmation is required the right is subject to be defeated by the court's refusal to confirm.

4. Where the judicial officer observes proper legal formalities at a judicial sale, and strikes off the property to a purchaser, who thereupon signs the conditions of sale, thereby entering into a contract to purchase the property at the price named, the situation is the same as if the contract were between private parties voluntarily entering into a contract of sale and purchase.

5. A sheriff's deed of land sold at a judicial sale relates back to the time of the contract of purchase entered into by the purchaser on the officer striking off the property to him at a public sale, though the deed is not to be delivered at once, and though the purchaser is not entitled to possession until he secures his deed.

6. The legal title does not vest in the purchaser at a judicial sale until the delivery of the deed, and in the meantime the property is held in trust for him, and the beneficial ownership of the property is vested in him, so that any increase or decrease in value inures to him.

7. The purchaser at a judicial sale, who on the acceptance of his bid executes a contract to purchase on the conditions of the sale, acquires

thereby an equitable interest in the property, so that a loss occasioned by the destruction of a building on the land occurring thereafter, and before the confirmation of the sale, falls on him.

On petition of Thomas Gormley. Heard upon petition and affidavits.

On the 21st day of October, 1909, the sheriff of Hudson county, New Jersey, held a sale under a writ of *fieri facias* issued in the above-entitled suit. At that sale the property was struck off to Thomas Gormley, the petitioner, who bid $2,300. The conditions of sale which he signed provided, among other things:

"*First.* The property will be sold to the highest bidder, subject to confirmation by the chancellor.

"*Second.* Ten per cent. of the purchase. price shall be paid when the property offered is struck off ＊ ＊ ＊ in default whereof it may be put up again and sold immediately.

"*Third.* The balance of the purchase-money shall be paid on the fourth day of November, A. D. nineteen hundred and nine ＊ ＊ ＊ at the sheriff's office. ＊ ＊ ＊

"*Fourth.* The deed will be delivered at the above time, upon compliance by the purchaser with these conditions, provided said sale is confirmed as aforesaid.

"*Fifth.* The purchaser will be held bound by the purchase, whether he attends to receive the deed and comply with the conditions of sale or not. If he does not so comply with them the property may be again advertised and sold, or the purchaser may be held liable for his bid, at the option of the sheriff. In case of re-sale at a less price than the former bid with interest and expenses, the former purchaser will be held liable for the deficiency, to meet which, the money paid by him shall be retained and applied by the sheriff.

"I have bid off the property above described for the sum of twenty three hundred dollars, and agree to comply with the above conditions of sale."

The property to be sold was accurately described in a paper annexed to and forming part of the conditions signed by the purchaser.

On the night of the day upon which this sale took place a house standing upon the mortgaged premises was destroyed by fire.

This is a petition by Thomas Gormley, the purchaser at the sheriff's sale, praying to be relieved of his bid, or to have a deduction therefrom of the amount of loss occasioned to the prop-

erty by the fire. The petition was filed before the date fixed for the confirmation of the sale, and before the day fixed for the delivery by the sheriff to the purchaser of the deed.

*Mr. Maximilian T. Rosenberg,* for Gormley, petitioner.

*Mr. William R. Barricklo,* for the complainant.

*Mr. Peter Stillwell,* for David and Nellie Brown, defendants.

GARRISON, V. C.

The fact that this petition·is filed before the date fixed for the confirmation of the sale does not, in my view, affect the principle which should be applied in the decision of the case.

This is a foreclosure suit, and the statute requiring confirmation is the act of March 12th, 1880. *Gen. Stat. p. 2111 § 45.* This statute and rule 205 of this court concerning the same subject-matter recently received judicial construction in this court in the case of *Oakley* v. *Shaw (Vice-Chancellor Walker, 1908), 69 Atl. Rep. 462.* In that case the court refers to many of the cases upon this subject-matter, and reaches the conclusion "that the only office of a written objection to the confirmation of a sheriff's sale in foreclosure, under the act of March 12th, 1880, and rule 205 of this court, is to urge the overthrow of a sale upon the sole ground that the property did not bring the highest and best price that could be obtained for it in cash, and that an attack upon the sale on any other ground must be made the basis of independent action either by bill or petition." See, also, *Bethlehem Iron Works* v. *Philadelphia and Seashore Railroad Co. (Chancellor McGill, 1892), 49 N. J. Eq. (4 Dick.) 356,* and *Fleming* v. *Fleming Hotel Co. (Vice-Chancellor Bergen, 1905), 70 N. J. Eq. (4 Robb.) 509.* Any effort on behalf of the purchaser at the sale to be relieved of his purchase must be by some independent proceeding and not by mere objections to confirmation, and may be by petition.

Since the statute in question, which requires confirmation, has been judicially held to have been enacted for the purpose of enabling the court before the sale is carried out to be assured

that the property has brought the best and highest price obtainable in cash at the time of the sale, the court, in this case, must treat this sale as if it were, or were about to be, confirmed, and as it would treat either a confirmed sale or one that required no confirmation, because there is nothing before me to show that the property did not bring the price obtainable in cash at the time of the sale, and nothing to show that the sale was not properly conducted and should not therefore be confirmed.

The practice of the English court of chancery in opening sales whenever an offer of a larger amount for the property was made was discarded and not adopted in this state. *Morrisse* v. *Inglis* (*Court of Errors and Appeals, 1889*), *46 N. J. Eq.* (*1 Dick.*) *306* (at *p. 309*) ; *Rogers* v. *Rogers Locomotive Co.* (*Vice-Chancellor Emery, 1901*), *62 N. J. Eq.* (*17 Dick.*) *111* (at *p. 118 et seq.*) ; *Fleming* v. *Fleming Hotel Co., supra.*

The English practice treats the bidder in the light of one who has made an offer to be reported to the court, and if a larger offer is made by another the sale to the former is not confirmed. This is so radically different from our practice that the English authorities will have to be viewed with great caution, particularly those which lay stress upon the effect of confirmation.

There are some cases in England which hold that there is no contract until the court has confirmed the bidding in the master's office, but even these cases are doubted by later decisions, and it would not seem, from a consideration of the English authorities, that such was now the rule there. However that may be, after the courts in England have once determined that the contract of sale was complete, whether they fixed that period at the time of the sale or at the time of the confirmation, they then applied the rule concerning the rights and responsibilities of the parties which, I think, is the correct rule, and which I shall formulate and state hereafter.

*Ex parte Minor, 11 Ves. Jr. 558:* The estate of a lunatic was sold before the master on the 9th of February, 1805. On the 26th of February there was a petition that the report of the master might be confirmed. On the 28th of February there was a fire, and this was a petition by the purchaser to have the value of the premises destroyed ascertained and the amount deducted

from the purchase-money. The argument on behalf of the petitioner was that it was necessary to distinguish this case from those cases in England which are cited in his brief and which hold that from the date of the contract of purchase the purchaser was, in equity, the owner to all intents and purposes, and should gain or suffer, as the case might be, by changes in the subject-matter of the sale, because in this case the highest bidder could not be considered the owner until the confirmation of the report, and if the premises, by accident, were increased in value, as by the discovery of a mine, the court would require an increase of price (citing cases).

The contrary argument was that, referring to all legal and equitable consequences attaching to sales, the court could not properly distinguish sales before masters from sales in any other manner, and that from the time the purchaser signs the master's book, and has the report declaring him the purchaser, all those consequences must follow.

Lord-Chancellor Eldon, upon the argument, said: "The question must depend upon the point, What is the date and time of the contract at which it can be said to have been complete? Is the bidding in the master's office the contract between the court and the bidder, or only an authority to the master to tell the court that, if the court approves, the court may make a contract with him (the purchaser) upon the terms proposed?" Subsequently, his lordship determined that the loss must fall upon the vendor.

The same judge, in the case of *Anson* v. *Towgood,* decided in 1820, about fifteen years after the previous case, said, concerning a sale before a master: "Can anything turn upon the report not being confirmed? There was a case about a house being burnt down before the confirmation of the report (*Ex parte Minor,* *11 Ves. 559*), but if the tenant for life had died the same night, must not the purchase-money have been paid? The report, I think, when confirmed, must have relation back to the purchase, and the contract, I apprehend, was made the moment that the purchaser's name was entered in the master's book."

And in *Millican* v. *Vanderplank, 11 Hare 135,* decided in 1853, the vice-chancellor, Sir W. Page Wood (at *p. 140*), says:

"There are material distinctions between a sale by private contract and a sale by auction before the master in the ordinary view. Sales by auction before the master are of a peculiar character. The person who is the highest bidder knows that he is not the purchaser until the confirmation of the report, and that, until such confirmation, any stranger may apply to the court to open the biddings, and that, upon such an application, the party making it does not necessarily become himself the purchaser, * * * and the property is again put up to auction. All persons bidding at sales before the master are aware that they are of this peculiar character. I cannot, however, concur in the argument which was addressed to me in this case, that a distinction between sales by auction and private contract was that the purchaser was not bound in the former case until the confirmation of the report.

"Lord St. Leonards, in *Vesey* v. *Elwood, 3 Dru. & War. 74,* after considering the cases of *Ex parte Minor, 11 Ves. 559,* and *Anson* v. *Towgood, 2 Jac. & W. 637,* came to the conclusion that the purchaser was bound before the confirmation of the contract by the court. He held this in the strongest case which can be supposed, in which a life dropped in the meantime before the purchaser could, according to the practice of the court, have confirmed the report."

In the case of *Robertson* v. *Skelton, 12 Beav. 260,* the master of the rolls, Lord Langdale, held "By the established rule of the court the purchaser is to be considered, in fact, as the owner of the estate from the date of the order confirming the report, and any deterioration of the property arising from accident, as by fire, without the fault of the vendor, falls upon the purchaser." In this case two houses were sold by auction in a creditor's suit. By the conditions of sale the purchaser was to get the report confirmed before the 8th of August, 1846, and pay his purchase-money into court before the 12th of November, 1846, and be let into possession as from the 29th of September, 1846. After the confirmation, but before he paid his purchase-money and obtained the conveyance and possession, part of the property fell down and had to be repaired. It was held that the loss fell upon

the vendee. No point, of course, was involved in this case as to the matter of confirmation.

In New Jersey the courts have always endeavored to give the greatest stability to judicial sales, and upheld them unless there was some strong, equitable or legal reason to the contrary.

"A purchaser at an official sale becomes invested with a fixed and definite legal right, which is recognized and enforced by the law, and of which he cannot be deprived except upon some legal or equitable ground." *Chamberlain* v. *Larned* (*Chief-Justice Beasley, Court of Errors and Appeals, 1880*), *32 N. J. Eq.* (*5 Stew.*) *295;* see, also, cases cited in *Palladino* v. *Hilpert, 72 N. J. Eq.* (*2 Buch.*) (at *p. 278 et seq.*).

This right of the purchaser, in those cases in which confirmation is required, is fixed, though defeasible, and is subject to be defeated if the court refuses to confirm the sale, but, notwithstanding this, the right of the purchaser and the correlative rights of the judicial officer are established at the time of the sale and by the contract then made.

In my view there is no real distinction in this state in respect to the principles to be applied respecting the rights of the parties between judicial sales and other similar sales voluntarily made between parties.

The judicial sale is made by the officer in whom the law has lodged the power to make the sale. The fact that it is *in invitum,* and that the officer is only exercising a power and has not title, does not, in my view, in any way alter the rules to be applied when the contract has once been made.

Since there exists a parallel line of decisions which are contradictory and confusing upon this point, it will be necessary to consider them in order to reach a clear determination and conclusion.

In *Den* v. *Steelman, 10 N. J. Law* (*5 Halst.*) *193,* Chief-Justice Ewing, in the supreme court, held that the substantial part of a judicial sale was the delivery of the deed by the sheriff to the purchaser, and that everything related to that; and he further held that under our law the exercise by the sheriff of the power of sale vested in him did not become effective until he delivered the deed, and that, therefore, there was no relation

back to the date of the sale (when the contract between the purchaser and the sheriff was entered into). He therefore held that the law which would obtain as between a voluntary vendor and vendee did not apply as between sheriff and purchaser. The decision in the case involved these facts: A sale under a judgment by a sheriff who made a contract with A as purchaser. Before the sheriff's deed was delivered to A a judgment was recovered by B against A. Under B's judgment against A, A's interest in the premises purchased by him at the sheriff's sale aforesaid was attempted to be sold, and the contest was between the respective titles. The court held that whatever right A, the purchaser at the first sale, had, it was not such as was subject to execution under a writ of *fieri facias* issued on a common-law judgment.

Since there was no provision in any of the statutes which subjected an equitable estate to levy and sale under a common-law judgment, this decision seems to me to be unexceptionable, but the reasoning of the chief-justice concerning these other matters does not seem to me to have been necessary for the decision of the case.

His reasoning, however, was adopted in other cases. *Bloom* v. *Welsh (Supreme Court, 1858), 27 N. J. Law (3 Dutch.) 177; Disborough* v. *Outcalt (Chancellor Vroom, 1831), 1 N. J. Eq. (Saxt.) 298; Ketchum* v. *Johnson's Executors (Chancellor Haines, 1843), 4 N. J. Eq. (3 Gr. Ch.) 377; Pearman* v. *Gould (Chancellor Runyon, 1886), 42 N. J. Eq. (15 Stew.) 4,* and particularly by Chancellor Magie in the case of *Thompson* v. *Ramsey (1907), 72 N. J. Eq. (2 Buch.) 457,* with which I shall deal hereafter.

Parallel with these cases, and not adverting to them, there were the decisions in *Morse* v. *Hackensack Savings Bank (Court of Errors and Appeals, 1890), 47 N. J. Eq. (2 Dick.) 279; Wimpfheimer* v. *Prudential Insurance Co. (Vice-Chancellor Emery, 1898), 56 N. J. Eq. (11 Dick.) 585; First National Bank* v. *Thompson (Vice-Chancellor Stevens, 1900), 61 N. J. Eq. (16 Dick.) 188,* and *Carpenter* v. *Shanley (Vice-Chancellor Garrison, 1909), 73 Atl. Rep. 64,* where exactly the opposite is held, namely, that the substantial thing in a judicial sale is the

contract made at the time of the sale between the officer and the purchaser, and that the delivery of the deed is a mere ministerial act on the part of the judicial officer, a mere formality, and that when it is delivered it relates back to the date of the sale.

The sheriff or other judicial officer is held to be the agent appointed by law for the person or persons whose rights are to be disposed of (*Brady* v. *Carleret Realty Co.* (*Court of Errors and Appeals, 1904*), *67 N. J. Eq.* (*1 Robb.*) *641*), and the statute prescribes that the deed of conveyance which he shall give

"shall transfer to or vest in the said purchaser as good and perfect an estate to the premises therein mentioned as the person, against whom the said writ or writs of execution were issued, was seized of or entitled to at or before the said judgment; and as fully, to all intents and purposes, as if such person had sold the said lands, tenements, hereditaments and real estate to such purchaser and had received the consideration money, and signed, sealed and delivered a deed for the same."

By what seems to me to be a perfect analogy, it must therefore be held that when this legal agent, namely, the judicial officer, observing proper legal formalities, at a public sale strikes off the property to a purchaser, who thereupon signs the conditions of sale, thereby entering into a contract to purchase the premises named at the price named, the situation is exactly the same as if the contract were between private parties. The sheriff is vested by law with the power, on behalf of the persons against whom he holds the writ, to sell the property. This he does, and a written contract satisfying the statute of frauds is then made. I cannot perceive any reason why the same principles should not control the parties with respect to this contract as would control private parties voluntarily entering into a similar one.

Nor can I perceive why, when the deed which the judicial officer subsequently gives is delivered, it should not relate back to the time of the contract which undoubtedly, in my view, is the substantial thing in the transaction. The fact that the deed is not to be delivered at once, and that, in the meantime, under the law, the purchaser is not entitled to possession, and is not

entitled to possession until he secures his deed, does not affect the situation as equity views it.

Chancellor Magie, in the case of *Thompson* v. *Ramsey, supra,* reverted to and depended upon the doctrine of *Den* v. *Steelman, supra,* and refused to adopt the doctrine enunciated by Mr. Justice Depue in *Morse* v. *Hackensack Savings Bank, supra,* because he held that the doctrine enunciated in the last-named case that the contract between the judicial officer and the purchaser was the substantial thing, and the delivery of the deed a mere formality which, when delivered, related back to the date of the contract, was not necessary to the decision of that case, and was therefore *obiter.* The chancellor thereupon refused to consider *Morse* v. *Hackensack Savings Bank* as a precedent, and discarded the reasoning therein in favor of the reasoning of Chief-Justice Ewing in *Den* v. *Steelman.*

I do not think it is clear by any means that the expression of opinion by Mr. Justice Depue in *Morse* v. *Hackensack Savings Bank* concerning this matter was *obiter,* and, in my view, it was necessary for him to decide the point in question to reach the decision which the court did upon the facts in that case. In that case Terhune was the executor of his father's will and was also one of the devisees thereunder. Upon a judgment obtained against him his interest as heir was set up and sold by the sheriff on the 29th of August, 1888, to the bank. On the 22d day of September, 1888, Terhune, exercising the power of sale vested in him by the will, sold all of the lands of which his father was seized to Morse and immediately gave him a deed which was immediately recorded. The sheriff's deed was not delivered to the bank (the purchaser at the sheriff's sale) until five days thereafter, namely, on the 27th of September, 1888. The contest was between the bank and Morse.

A perfectly familiar principle was involved in the suit, namely, that the title which descended to the heir was subject to be defeated by the exercise by the executor of the power of sale contained in the will. That power of sale, when executed, related back to the date of the death, when the will became operative, and cut out the right of the heir and those who claimed by, through or under the heir.

Of course, if the executor had exercised the power of sale before the rights of the bank had attached—that is to say, before those who claimed under the heir had any rights—there would have been no occasion for any extended discussion, and no issue calling for the application of any principle excepting the perfectly familiar one above mentioned. But it is obvious, from the opinions in the court of chancery (*46 N. J. Eq. (1 Dick.)* *161*) and in the court of errors and appeals, *supra*, that other issues were in the suit and were determined.

The bank took the ground that, notwithstanding the familiar principle above alluded to, it was not operative in this case, because, having acquired their title through the heir before the exercise by the executor of the power of sale, they had the right to hold the title as against the purchaser at the executor's sale on account of certain equities which they urged. In the court of chancery this claim was held to be good. In the court of errors and appeals it was first held that, under the law, the purchaser at the sheriff's sale did convey a title prior in point of time to that of the purchaser at the executor's sale, and therefore was in a position to urge the equities in his behalf which he had raised and which had been considered in the court of chancery.

The investigation of the court of errors and appeals into these issues resulted favorably to the defendant, and resulted in a reversal of the court of chancery.

But upon the point which we are considering, the court of errors and appeals affirmed the position taken in the court of chancery. Mr. Justice Depue upon this point held "The date of the delivery of the sheriff's deed is a circumstance of no importance. A purchaser at a sheriff's sale acquires by the act of purchase a right to a conveyance of the premises in pursuance of the sale.. The delivery by the officer of a deed is a mere ministerial act which the officer is required to perform to consummate the sale and vest in the purchaser a title in compliance with the law under which the sale was made.

"The sheriff's deed, when delivered, has relation back to the time of the sale of which it is the consummation. * * * As a conveyance of the property the executor's deed (which, it

will be recalled, was made, dated, delivered and recorded September 22d) was, in legal effect, subsequent in point of time to the sheriff's deed to the complainant (which, it will be recalled, was made, executed and delivered on the 27th day of the same September)."

The cases which have followed this decision and adopted its finding upon this point have been given, *supra.*

I incline to the opinion that this case is a precedent. I also incline to the opinion that, upon reason as well as upon authority, the doctrine therein enunciated is the correct one.

If I am correct upon this matter, the result is that the confusion both of decision and reasoning arising out of the contradictory nature of the respective cases above mentioned is dissipated, and our rule is that the giving of the sheriff's deed is a mere ministerial act and is not the substantial part of a judicial sale, and, when given, relates back to the sale and the contract there made, with the result, likewise, that such contract is then to be treated, as previously stated, just as a similar contract voluntarily entered into between private parties concerning the same subject-matter would be treated.

That this latter is the case seems to me to be borne out by those authorities which hold that upon such a contract an action at law will lie by either party against the other for a breach (*Townshend* v. *Simon* (*Supreme Court, 1876*), *38 N. J. Law* (*9 Vr.*) *239; Smith* v. *Cunningham* (*Vice-Chancellor Emery, 1905*), *69 N. J. Eq.* (*3 Robb.*) *622*), or a bill in equity will lie by either party for the specific performance of the contract. *Ely* v. *Perrine* (*Chancellor Pennington, 1841*), *2 N. J. Eq.* (*1 Gr. Ch.*) *396; Bowne* v. *Ritter* (*Chancellor Runyon, 1875*), *26 N. J. Eq.* (*11 C. E. Gr.*) *456*.

The whole matter is so well expressed by Chief-Justice Depue in the case of *Townshend* v. *Simon, supra,* that a quotation will be useful. Commenting upon cases which hold a contrary doctrine to the one which he approved, and with respect to one of them which held that the signing of conditions of sale was a mere submission to the authority of the court, and not a contract either with the sheriff or the plaintiff, he said, *38 N. J. Law* (*9 Vr.*) (at *p. 243*): "The argument by which this con-

clusion was reached was that the memorandum lacked the essential elements of a contract, not only in parties but also in mutuality and consideration. Inasmuch as the legal results of a purchase at a sheriff's sale are an obligation on the part of the officer to convey, and on the part of the purchaser to accept a conveyance and pay the purchase-money, it is difficult to perceive wherein the undertaking is deficient in either mutuality or consideration. The duty of the officer to make conveyance of the lands on his acceptance of the bid of the successful bidder, and his power to transfer to the purchaser the title he is selling, are as much a consideration as his ability to pass the property and chattels on the sale of personal property. The only difference is that property in chattels passes by the sale, whereas, on a sale of lands, a deed is necessary to convey the legal title. The rights of the buyer, in both instances, are fixed when the bid is accepted. Whatever else is necessary to complete the transaction is merely a compliance with the forms of passing title to land. Each party, it is admitted, may compel performance by the other by the intervention of the court out of which the process issued. A more decided illustration of consideration and mutuality of a contract can scarcely be found. The same elements of mutuality and consideration are present in a sale by an officer having power to sell and ability to make conveyance, as attend a sale by an owner at public auction." And on page 244: "The notion that the contract is with the court is too fanciful to merit much consideration. It is regarded as such a contract as may be made the ground of a bill for specific performance in the name of the officer."

And in those cases in which the court itself is requested by the purchaser to relieve him of his purchase, the matter is dealt with as if it were an action of specific performance, and the same principles are applied. *McCarter* v. *Finch* (*Vice-Chancellor Pitney, 1897*), *55 N. J. Eq.* (*10 Dick.*) *248;* *Campbell* v. *Parker* (*Vice-Chancellor Pitney, 1900*), *59 N. J. Eq.* (*14 Dick.*) *342.*

In my view, therefore, the correct rule to be applied in our jurisdiction is that the purchaser at a judicial sale enters into a contract with the officer to which the same principles should

be applied which are applicable to a similar contract between private parties voluntarily entered into. And the fact that by the terms of the contract the purchaser is not entitled to possession until a future date does not in any way alter the legal or equitable rights of the parties.

The legal title does not vest in the purchaser until the delivery of the deed, but in the meantime it is held in trust for him. Since he has stipulated that he is not to receive possession until a future date, namely, the time when the deed is to be delivered to him, he is not entitled to the fruits of possession, which are the current avails of the land. There are numerous cases, which I shall not stop to cite, which hold that until he is entitled to possession he is not entitled to such avails. But excepting with respect to the time when he is entitled to possession and the fruits of possession, the contract vests the beneficial ownership of the property in such purchaser, and any increase of value or decrease therein inures to him.

In other jurisdictions the rule is, in some, as above stated, and in others, otherwise by reason of their statutes, and in some, it is otherwise by reason of the different view which the court in question takes of the situation arising out of a judicial sale.

Much care must, of course, be exercised in reading cases from other jurisdictions, to observe the extent to which they are affected by statute. Many of the cases will be found gathered in the note to *Robertson* v. *Van Cleave, 15 L. R. A. 68;* see, also, *Yeazel* v. *Einspahr, 24 L. R. A. 449,* and *Vance* v. *Foster, 9 Bush (Ky.) 389.*

And in disposing of a case arising under the laws of Nebraska —the courts of which hold that the confirmation of the sale is necessary to its completion—the supreme court of the United States, in the case of *Woodworth* v. *Northwestern Insurance Co., 185 U. S. 354; 46 L. Ed. 949,* said: "The claim in the case at bar is for the rents and profits of the land, which accrued and were collected by the mortgagor after the entry of the order of confirmation of the sale. Upon general principles, independent of the decisions of the courts of Nebraska, we would be constrained to hold that, under the circumstances present in the case at bar, * * * the purchaser acquired, as against the

mortgagor, by relation, both the legal and equitable title to the land purchased, at least as of the date of the order of confirmation of the sale."

And in the brief of counsel in that case there will be found many cases to support the principle there enunciated that the general equitable rule    *    *    *    carries the title back by relation to the date of the sale so as to award to the purchaser the intermediate rents. And the case of *Woodworth* v. *Northwestern Insurance Co.*, above cited, was followed in *Brown* v. *Northwestern Insurance Co., 119 Fed. Rep. 149;* see, also, *Missouri Valley Land Co.* v. *Barwick, 50 Kan. 61; 31 Pac. 685.*

I am of opinion, therefore, as I have heretofore stated, that under our decisions and statutes the proper holding is that the judicial officer and the purchaser at a foreclosure sale (and probably this applied to all similar judicial sales) stand in a similar position to parties who have contracted in writing for the purchase and sale of real estate.

If this is so, the disposition of the precise point in the case at bar is not difficult.

The note to *Bowen* v. *Lansing, 57 L. R. A. 643,* gathers up the cases from many of the jurisdictions concerning the rights of vendors and vendees in land contracts, and the conclusion to that note (*p. 654*) so well states what the cases hold that I shall quote it:

"Under the familiar doctrine that equity considers as done that which was agreed to be done, a contract for the sale of land operates as an equitable conversion. The vendee takes an equitable title, and his interest under the contract becomes realty; in case of his death before the conveyance is made the title descends to his heirs; he is entitled to all benefits attaching to the property, and must bear all losses, unless the contract shows a contrary intention on the part of the parties; he may execute a valid mortgage or deed of the property; and is entitled to the usual benefits attaching to the ownership of the property, subject, however, to the rights of the vendor, who holds the legal title as security for the payment of the purchase-money.

"Conversely, the vendor's interest constitutes personalty, and on his death, is distributable as such. He holds the legal title as trustee for the purchaser and as security for the payment of the purchase-money. He cannot give a valid deed or mortgage of the property to one having knowledge of the vendee's equities, though he may transfer his interest under the contract. The decisions are conflicting as to whether a judg-

ment against him constitutes a lien on the property ; some hold that it does not constitute a lien, while others hold that it constitutes a lien on his interest in the property which may be sold under the judgment.

"The doctrine will not be applied where it is apparent from the contract that the parties intended that it should not operate as an equitable conversion.

"Neither will it be applied where the contract is one the specific performance of which cannot be enforced.

"The conversion takes place at the time of the execution of the contract, even though the purchaser does not take possession or pay the purchase price ; though in some cases where the decisions were based on the language of the particular contracts, it was held that the equitable title did not pass until the performance of certain conditions."

And in judicial sales it should be noted that we are not embarrassed by the decisions which hold that the equitable title will not be held to have passed in those cases where the vendor was not in a position to make a good title, because, in judicial sales, the judicial officer is always in a position to make such title as he is bound to give.

Since the precise point involved in the question before me is: Upon whom should fall the loss occasioned by a fire occurring after a contract of sale and before the delivery of the deed, I would particularly direct attention to that portion of the above note which appears on page 647 under the sub-title I. *d.,* and see, also, the authorities cited in *29 Am. & Eng. Encycl. L. (2d ed.) 713.*

That the conclusions reached by the author of this note are fully justified by the course of decision in our own state will be found by consulting the following authorities in addition to those cited in the note above referred to : *Miller* v. *Miller (Chancellor Runyon, 1874), 25 N. J. Eq. (10 C. E. Gr.) 354; reversed, 27 N. J. Eq. (12 C. E. Gr.) 514,* but not on this point; *Keep* v. *Miller (Chancellor Runyon, 1886), 42 N. J. Eq. (15 Stew.) 100; Coles* v. *Feeney (Vice-Chancellor Pitney, 1894), 52 N. J. Eq. (7 Dick.) 493; Canfield* v. *Canfield (Vice-Chancellor Stevens, 1901), 62 N. J. Eq. (17 Dick.) 578; Marion* v. *Wolcott (Chancellor Magie, 1904), 68 N. J. Eq. (2 Robb.) 20.*

In *Grunauer* v. *Westchester Fire Insurance Co., 3 L. R. A. (N. S.) 107; 62 A. R. 418; 72 N. J. Law (43 Vr.) 289,* it was

held that "undoubtedly such contract creates the relation of trustee and *cestui que trust* between vendor and vendee. It produces in equity a complete transition of the vendor's holdings from real to personal, and gives the vendee the equitable ownership. After such contract the vendor's interest is no longer real estate, and the unpaid purchase-money is personalty, and goes to the vendor's personal representative in case of his death. * * *. Although the vendor still retains the legal title to the land agreed to be sold and conveyed, he thereafter holds it only as a trustee for the vendee, who becomes the equitable and beneficial owner. * * * Under such a contract and surrender of possession the vendee becomes the beneficial owner, and loss or destruction of the property falls upon him and not upon the vendor, and many cases decided in other jurisdictions directly hold such contract (either with or without transfer of possession) to be a breach of the condition in question." (Citing cases.)

The "condition in question" had reference to the condition in an insurance policy upon the premises issued to the vendor, which provided

"that if any change * * * takes place in the interest, title or possession of the subject of insurance * * * the entire policy shall be void."

It has been consistently held that by a completed contract of sale the vendee acquires an insurable interest in the premises, and this is so, irrespective, in my view, of whether or not he has taken possession. It is not the fact of possession which creates the beneficial equitable right in him; it is by force of the contract. Both the vendor and the vendee have insurable interests. See *Grunauer* v. *Westchester Fire Insurance Co., supra; Marion* v. *Wolcott, supra; Rich. Ins. L. 295 § 237.* See, also, the following cases and notes thereon: *Williams* v. *Lilley, 37 L. R. A. 150; Phinizy* v. *Guernsey, 50 L. R. A. 680; Nanquin* v. *Texas, &c., Co., 58 L. R. A. 711; Rawson* v. *Bethesda Church, 6 L. R. A. (N. S.) 448; Zenor* v. *Hayes, 13 L. R. A. (N. S.) 909.*

I am therefore of opinion, in the case in hand, that the loss occasioned by this fire falls upon the purchaser at the sheriff's sale. The result is that the petition of such purchaser must be dismissed, with costs, and the sale be confirmed.