HENRY W. CRANE, PLAINTIFF-RESPONDENT, v. MARY BIELSKI, WIDOW, AND GENEVIEVE BUSH, UNMARRIED, DEFENDANTS-APPELLANTS, AND WILLIAM ROSOFF · AND NETTIE ROSOFF, HIS WIFE, PURCHASERS AT FORECLOSURE SALE, PURCHASERS-RESPONDENTS.

Argued March 15, 1954—Decided May 3, 1954.

*Mr. Emanuel M. Ehrenkranz* argued the cause for appellants.

*Mr. A. Donald McKenzie, Jr.,* argued the cause for respondents William Rosoff and Nettie Rosoff (*Messrs. Kein & Scotch,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J.    The mortgagee, Henry W. Crane, commenced foreclosure proceedings on November 19, 1952 against the mortgagors, the appellants, Mary Bielski and Genevieve Bush, of the premises known as 986 Townley Avenue, Union. Judgment was entered and the property was duly advertised for sale on March 25, 1953.

About a week prior thereto, Miss Bush consulted Robert Daly, a member of the bar, and exhibited to him a notice of the forthcoming sale of the premises, of which her mother was the record owner.    Mr. Daly arranged for an adjournment of the sale for two weeks and says he advised Miss Bush of the new date by telephone and further informed her he could not assist in refinancing the mortgage and "recommended that she seek assistance elsewhere."

The subsequent confusion and misunderstanding are indicated by the various affidavits.    Mr. Daly tells of several telephone calls from Miss Bush in which she described her attempts to refinance the mortgage and the various opportunities she had to do so, and he concludes : "It was apparent to me that she was in somewise relying on me despite the fact that I had informed her that I could not be of assistance to her."    He says : "She was distraught and very upset about her plight, and, despite my insistance that I could be of no help, she nevertheless called me to report progress on the matter of refinancing.    To render my position clear, I wrote her a letter on April 7, 1953," which advised her that the sale was "up again tomorrow," which would be April 8.

Miss Bush and Mrs. Bielski say they did not receive the letter from Mr. Daly until the evening of that day, which was after the sheriff's sale had taken place.

At the sale the respondents Rosoff and his wife purchased the property for $12,200.    Within ten days, and on the 17th day of April, the appellants obtained an order to show cause why the sale of the premises should not be set aside and Mary Bielski permitted to make redemption of the amount due, on the ground of inadequacy of price and lack of notice.

The trial court concluded the price bid was not inadequate,

the only evidence to the contrary being the affidavit of the appellants, in which they valued the premises at "$18,000 or more." But the court nevertheless set aside the sale on the ground that the appellants failed to appear due to a misunderstanding and mistake on their part. It permitted the appellants to redeem the premises by paying the full amount of the judgment and costs, provided the same were paid on or before June 5, 1953, and that the defendants pay a counsel fee and title fee to the attorneys for the purchasers at the foreclosure sale. The appellants were likewise to pay interest at the rate of six per cent on the deposit made by the purchasers at the sheriff's sale, but an order was entered suspending the necessity of the payment of the redemption money pending the appeal which was taken.

The Appellate Division reversed, holding: "It was a mistake in exercise of judicial discretion to have set aside this sale in the first instance" because there was no showing of inadequacy of sales price and any mistake made was due solely to the negligence of the appellants. *Crane v. Bielski*, 27 *N. J. Super.* 448 (*App. Div.* 1953). On petition, we granted certification.

*Ghee v. Davenport*, 2 *N. J. Super.* 532 (*Ch.* 1949), affirmed in part 4 *N. J. Super.* 518 (*App. Div.* 1949), intimates, on facts not revealing any equities in favor of one party as against the other, that the equity of redemption can be redeemed if applied for within ten days after the sale, as an absolute right.

It rests upon certain cases holding, under the then pertinent statutes, that the sale is not final until confirmation. *Federal Title & Mortg. Guarantee Co. v. Lowenstein*, 113 *N. J. Eq.* 200 (*Ch.* 1933); *Vanderbilt v. Brunton Piano Co.*, 111 *N. J. L.* 596 (*E. & A.* 1933).

Other earlier decisions not wholly compatible with the theory of these cited cases, *Wimpfheimer v. Prudential Ins. Co.*, 56 *N. J. Eq.* 585 (*Ch.* 1898), and *Union Bldg. & Loan Ass'n v. Childrey*, 97 *N. J. Eq.* 20 (*Ch.* 1924), indicate the rights of the parties are determined as of the date of the sale, subject only to the order of confirmation.

The problem encountered in the *Ghee* case, *supra,* arose because *Rule* 3:77–5, now *R. R.* 4:83–5, did away with the necessity of confirmation of foreclosure sales in the absence of objection to the sale within ten days thereafter. The court decided that the view expressed in *Federal Title & Mortg. Guarantee Co. v. Lowenstein, supra,* and *Vanderbilt v. Brunton Piano Co., supra,* was more persuasive; and, as the rights of the parties were fixed as of the date of confirmation and there could be redemption formerly between the time of sale and the time of confirmation, an absolute right to redeem now existed in the ten-day period provided for in the rules.

The Appellate Division repudiated this doctrine in the instant case. The appellants, however, did not press their claim as an absolute right of redemption under the *Ghee* case, *supra,* in the Chancery Division. Rather, they relied upon an equitable doctrine based on mistake and misunderstanding, and in view of the fact that our determination turns upon the applicability of this principle, we prefer not to decide the issue presented by the *Ghee* case, being apprehensive it might, under these circumstances, be characterized as mere dictum.

Quite independent of statute or rule of court, the Court of Chancery has inherent power to order a sale of mortgaged premises and to control its process directed to that end, and this inherent power of the court has never been doubted. *Federal Title & Mortg. Guarantee Co. v. Lowenstein, supra.*

The power of the court to set aside such sale is unquestionable, "but its exercise, like all other judicial action, must always rest upon some consideration of justice." *Hayes v. Stiger,* 29 *N. J. Eq.* 196 *(Ch.* 1878).

In *Karel v. Davis,* 122 *N. J. Eq.* 526 *(E. & A.* 1937), Justice Heher observed judicial interference is warranted when there is an independent ground for equitable relief, "such as fraud, accident, surprise, irregularity in the sale, and the like, making confirmation inequitable and unjust to one or more of the parties."

The trial court decided the failure of the appellants to attend the sheriff's sale was "the result of a misunderstanding and mistake" on their part, and there is ample in the record to support such a finding, for, in addition to the facts already alluded to, an intimate visualization of the existent uncertainty, confusion and misunderstanding is impressively and graphically narrated in Daly's affidavit. He says:

"It is difficult for me to describe in this form the mental processes of Genevieve Bush as demonstrated by her one visit to my office and her numerous telephone conversations to me over the short period involved. I am satisfied, however, that, while perhaps she should have known that the sale was to be held on April 8, 1953, I am just as sure that in her desperation and distraught condition she did not know, or at least could not believe, that it was to be, and was in fact held."

We are satisfied that the trial court had inherent power to set aside the sale and we conclude it was justified in so doing on the record before it, especially in view of the terms imposed.

Should the appellants in these facts be barred from relief merely because the mistake was their own and not induced by someone else in an effort to mislead them? We think not.

There are many instances in which the equity courts have in their discretion refused relief where there was negligence on the part of him by whom the doctrine of mistake was invoked. *Parkhurst v. Cory*, 11 *N. J. Eq.* 233 (*Ch.* 1856); *Williams v. Doran*, 23 *N. J. Eq.* 385 (*Ch.* 1873); *Horner v. Corning*, 28 *N. J. Eq.* 254 (*E. & A.* 1877). But in *Murray v. D'Orsi*, 98 *N. J. Eq.* 548 (*Ch.* 1925), the court observed that "a party's own negligence will not always occasion refusal of relief * * * each instance of negligence must depend to a great extent upon its own circumstances," and that in many instances "the complaining party has been relieved of the consequences of his mistake of fact, even where it was due to his own clear negligence."

In *Campbell v. Gardner*, 11 *N. J. Eq.* 423 (*Ch.* 1857), the sale was sought to be set aside by reason of mistake. The

owner alleged no process to appear was ever served upon her and "she was wholly ignorant of the proceedings in the' suit, and of the fact that the property was to be sold, until after the sale had taken place." The Chancellor plainly intimated he did not believe the plaintiff had been misled, but pointed out:

"* * * there are some considerations * * * which incline me to regard the case with indulgence. The defendant is a woman advanced in life * * * and, as the evidence shows, had no one upon whom she could rely for aid and advice with any confidence. This is a matter deserving some consideration, for it may be said, that it was culpable negligence in her not to attend to the notice that was served· upon her, and that, while the court may properly aid a party who has been innocently misled, it will extend no indulgence to one to whom culpable negligence can be attributed. This is certainly correct, and it is therefore proper to look at the character and situation of the party, in order to ascertain what degree of negligence is properly to be imputed."

And despite the incredibility of the evidence as to lack of notice, the court set the sale aside.

█ The "character and situation" of the appellants here was such as to prevail upon the trial court to allow the application of the doctrine of mistake. "Mistake," by its very definition, implies some degree of negligence. Human failing is its essence and it denotes error of judgment. However, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to set aside the sale.

█ The respondent contends inadequacy of price is a material element of the setting aside of a judicial sale and its absence connotes no injury is suffered.

Both precedent and logic dictate otherwise, for the cases clearly hold that inadequacy is just one of the factors to be taken into consideration—not that it is an indispensable ingredient. In *Karel v. Davis, supra,* the court said:

"The principle is not to be confined in its application to cases featured by inadequacy of price."

See also *Seaman v. Riggins and Moir,* 2 *N. J. Eq.* 214 (*Ch.* 1839); *Marlatt v. Warwick & Smith,* 18 *N. J. Eq.* 108 (*Ch.* 1866), affirmed 19 *N. J. Eq.* 439 (*E. & A.* 1867); *Morrisse v. Inglis,* 46 *N. J. Eq.* 306 (*E. & A.* 1889).

If the court was swayed by the dilemma of an aged and distraught widow whose only asset, the roof over her head, was about to be taken from her by a process apparently quite beyond her comprehension, allegedly without notice of the time of the sale, we think in equity it was rightly influenced.

■■ "Equity is equality," and if the facts here presented were as a matter of law insufficient to move the court, in its discretion, to set aside the sale, then a most stolid quality has crept surreptitiously into our equity jurisprudence, whose primary function over the many years has been the administration of essential and fundamental justice.

■ We find nothing in the record warranting a reversal of the relief granted upon the ground that it was "a mistaken exercise of judicial discretion." In fact, we are convinced that the trial court recognized and acted upon the maxim lying at the very foundation of equitable jurisprudence, that equity "will not suffer a wrong without a remedy." The court considered the problem encountered with reason and conscience to a just and equitable result.

Admittedly a court, as decided in many adjudications, should approach all such issues with a marked degree of caution and the relief granted should be sparingly exercised, but this required circumspection does not mean mitigation should not be extended regardless of the equitable circumstances involved.

The judgment of the Appellate Division is reversed and the judgment of the Chancery Division is restored and reinstated with the conditions as there imposed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice OLIPHANT—1.