943 A.2d 923

MIDFIRST BANK, PLAINTIFF v. KENNETH GRAVES; HOUSE-HOLD FINANCE CORPORATION, III; WACHOVIA BANK OF DELAWARE, NA F/K/A FIRST UNION NATIONAL BANK OF DELAWARE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Essex County

Decided August 24, 2007.

*Richard P. Haber,* for plaintiff (*Zucker, Goldberg & Ackerman,* attorneys).

*Edward S. Seradzky,* for third-party purchaser, AAAM Investments, L.L.C.

KLEIN, J.S.C.

This matter came before the court on a motion brought by AAAM Investments, L.L.C. (hereinafter "AAAM") to vacate a foreclosure sale, and a cross-motion to confirm sale filed by plaintiff, Midfirst Bank. The property, commonly known as 295 Rose Street, Newark, New Jersey (hereinafter "the property") was the subject of a foreclosure proceeding. Subsequent to the entry of the final judgment, the Sheriff of Essex County conducted a sale of the property on January 30, 2007. AAAM was the successful bidder with a bid amount of $118,000. As required by statute, AAAM paid a deposit in the amount of $23,600.

AAAM has requested that its deposit monies be returned and the sale vacated. According to the certification of AAAM's principal, Anthony Martinez, it was his "understanding that the plaintiff had an obligation to insure that the property be maintained in the same condition as existed at the time that the property was advertised for sale." He asserted that he visited the property to ascertain its condition approximately one-to-two weeks prior to the sale, at which time he observed that the property appeared to be intact and occupied. However, when he revisited the property one or two days after the sale, he observed a "drastic change." Initially, he noticed that the front door was ajar and the lock broken. Upon entering, he saw that all of the kitchen cabinets

had been removed, many of the windows were missing, the interior had been "gutted," and there was a significant amount of vandalism. AAAM argues that plaintiff's failure to maintain the condition of the property should relieve it of the obligation to pay the balance of its bid.

Plaintiff advances several arguments in opposition to AAAM's motion and in support of its cross-motion. First, plaintiff contends that AAAM's motion is untimely, inasmuch as *R.* 4:65-5 requires that any motion objecting to a sheriff's sale "shall be made returnable not later than 20 days after the sale . . . ." Second, plaintiff maintains that there is no legal support for the argument that it had an obligation to maintain the property. Third, plaintiff urges the court to find that AAAM assumed the risk of loss based on the doctrine of equitable conversion. Fourth, the doctrine of *caveat emptor* and the State's interest in the finality of the sale process mandate that AAAM not be released from its bid.

There is a minor procedural issue to be addressed prior to a discussion of the merits. On April 17, 2007, plaintiff had filed its own motion to vacate the sale and declare the bidder in default. That motion was granted, unopposed, on May 23, 2007. The motion was served on attorney David Kessler, based upon information plaintiff received from its bidding agent that "295 Rose St. Associates, LLC c/o David Kessler" was the successful bidder. It is clear from both the present motion filed by AAAM, as well as the Sheriff's acknowledgment of purchase and conditions of sale, that AAAM was, in fact, the successful bidder. Accordingly, plaintiff requests that the order of May 23, 2007, be vacated.

The procedural history reveals an unexplained delay on the part of AAAM, considerably beyond that contemplated by *R.* 4:65-5, in seeking relief from its bid. It was compounded, as noted above, by the fact that plaintiff waited until April 2007 to file its own motion and then served the order on the wrong entity. Nevertheless, because there are substantive reasons for denial of the relief

AAAM seeks as set forth below, the court declines to decide the motions on procedural grounds.

A court of equity has the power to vacate a foreclosure sale based on considerations of equity and justice. *See Crane v. Bielski,* 15 *N.J.* 342, 104 *A.*2d 651 (1954); *see also* 30A *N.J. Practice, Law of Mortgages,* § 35.17, at 464 (Myron C. Weinstein) (2d ed. 2000). The public policy underlying sheriffs' sales dictates that this power should be used sparingly and only when necessary for cogent reasons to correct a plain injustice or injury. Id. at 465. Case law holds that the power is appropriately exercised when there is "an independent ground for equitable relief, 'such as fraud, accident, surprise, irregularity in the sale, and the like, making confirmation inequitable and unjust to one or more of the parties.'" *Crane, supra,* 15 *N.J.* at 346, 104 *A.*2d 651 (*quoting Karel v. Davis,* 122 *N.J.Eq.* 526, 530, 194 *A.* 545 (E. & A.1937)).

Under the factual circumstances presented, this appears to be a case of first impression. There is no known case that defines "surprise" as deterioration, damage, or other change in the condition of property. There is support, however, for application of the doctrine of equitable conversion. In *Cropper v. Brown,* 76 *N.J.Eq.* 406, 74 *A.* 987 (Ch.1909), a purchaser at a sheriff's sale sought to be relieved of his bid because the house burned down on the night after the sale, but prior to delivery of the sheriff's deed. The court initially observed that New Jersey courts "have always endeavored to give the greatest stability to judicial sales, and upheld them unless there was some strong, equitable or legal reason to the contrary." *Id.* at 412, 74 *A.* 987. After an extensive review of decisional and statutory authority, the court stated as follows:

> [T]he purchaser at a judicial sale enters into a contract with the officer to which the same principles should be applied which are applicable to a similar contract between private parties voluntarily entered into. And the fact that by the terms of the contract the purchaser is not entitled to possession until a future date does not in any way alter the legal or equitable rights of the parties.
>
> The legal title does not vest in the purchaser until the delivery of the deed, but in the meantime it is held in trust for him ... But excepting with respect to the time

when he is entitled to possession and the fruits of possession, the contract vests the beneficial ownership of the property in such purchaser, and any increase of value or decrease therein inures to him.

[*Id.* at 418–19, 74 *A.* 987.]

   Under the reasoning in *Cropper,* the doctrine of equitable conversion applies to foreclosure sales. Thus, the bidder in that case was deemed to bear the loss, and the sale was confirmed by the court. Simply stated, the resulting rule is that the purchaser is the equitable owner, and the vendor retains the legal title to the land "only as a trustee for the vendee, who becomes the equitable and beneficial owner . . . and loss or destruction of the property falls upon him and not upon the vendor." *Id.* at 422, 74 *A.* 987. (citation omitted.)

   There is a recognized exception to application of the doctrine, in both judicial and private sales, where "it is apparent from the contract that the parties intended that it should not operate as an equitable conversion." *Id.* at 421, 74 *A.* 987. *Cf. Coolidge & Sickler, Inc. v. Regn,* 7 *N.J.* 93, 99, 80 *A.*2d 554 (1951) (doctrine is "subject to a provision in the contract of sale obligating the vendor to deliver the property in the same condition it was in at the time of the making of the contract, reasonable wear and tear excepted"). In *Coolidge,* the plaintiff mortgagee in a foreclosure action acquired the property at a sheriff's sale, and then arranged to sell the property to defendants. A deposit of $200 was forwarded to the plaintiff upon the condition that the fixtures pertaining to the building were included in the sale.

   The contract of sale prepared by the plaintiff in that case contained the following relevant provisions:

4. . . . [T]he premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted.

. . . .

9. This agreement includes all fixtures permanently attached to the building or buildings herein described, and appurtenances . . .

10. Physical condition of the property is sold 'as is' except that Seller agrees that the property will not be stripped of bathroom fixtures, heating equipment, electric pump, electric fixtures in the dwelling.

[*Id.* at 96–97, 80 *A.*2d 554.]

After the mortgagors had been removed from the premises, an examination by the defendants disclosed significant vandalism. The electric light fixtures in the bathroom, kitchen, and grocery store attached to the dwelling were gone; the kitchen range, sink, and cabinets were missing, as well as certain fixtures in the bathroom. Damages to the store included holes in the floor, missing shelves and showcases, and removal of a partition that caused the upper floor to sag. The insulation of a "walk-in" ice box had been chopped off, holes punched in the cinder blocks, and the heavy door removed. In the cellar, heating pipes were missing, as well as fittings of the electric pump for the well, which was the only water supply. Moreover, the fuse box had been damaged, the cesspool littered with debris, and a large area of shingles on one side of the garage was torn off. The record in that case reflected that the plaintiff had conceded that all of the vandalism had been caused by the mortgagors just prior to their eviction. *Id.* at 96, 80 *A.*2d 554.

The court in *Coolidge* construed the contract to require that the premises be conveyed in substantially the same condition they were in at the time the contract of sale was entered into, reasonable wear and tear excepted, with a "specific guarantee by the seller that the important fixtures specifically mentioned in paragraph 10, not only would be treated as reality [sic] but also would be in the building at the time of the transfer of title to the defendants." *Id.* at 100, 80 *A.*2d 554. The court concluded that the plaintiff failed to perform its contractual obligation with respect to the condition of the property, entitling the defendants to rescind and recover their deposit.

The case before this court is so factually distinguishable from *Coolidge* as to furnish no basis for AAAM's claim that plaintiff was obligated to maintain the condition of the property. There is nothing in the nature of a contractual provision imposing such an obligation. To the contrary, the conditions of sale expressly stated that the property was being sold in an "as is" condition, with no qualifiers or exceptions. The language meant exactly

what it said, namely, that there were no guarantees or representations as to the condition of the property. Included among the announcements at the sale was that it was subject to "such facts as an accurate survey and physical inspection of the premises may reveal." To put it succinctly, this is a classic example of *caveat emptor* language, compelling a different result than in *Coolidge*.

AAAM appears to be proceeding from the mistaken belief that plaintiff was in the best position to know the condition of the property at the time of the sale. In fact, plaintiff's counsel disclaimed any such knowledge or ability. Plaintiff was not the owner of the property, but a mere lienholder. Particularly where the mortgaged property was occupied up to the time of sale, as here, any inspection would be no more than a "drive-by" of the exterior. In this respect, plaintiff was subject to the same limitations as AAAM. It is logical to assume that the property was sold "as is" for this very reason.

The court declines to impose any obligations of inspection or warranty on the mortgagee, except where bargained for and agreed upon between the parties. It would be an undue burden and would undermine the public policy applicable to judicial sales, rendering them subject to frequent challenge. It must be recognized that bidders at sheriffs' sales are, with rare exception, investors. As with investments generally, sometimes they are profitable and sometimes not. It all goes with the territory, which by its very nature is somewhat speculative.

The result reached here is particularly appropriate under the facts of this case. AAAM acknowledged that its last inspection was one-to-two weeks prior to the sale, and it did not visit the property again (and enter same) until one or two days after the sale, which is a considerable interval. AAAM had no proofs whatsoever as to when and under what circumstances the vandalism occurred, for example, whether it was before or after the sale, and whether it was committed by the mortgagors or unknown third-party intruders. There is no basis to determine that the damage occurred prior to AAAM's assuming the risk of loss as

beneficial owner of the property. *See Cropper, supra,* 76 *N.J.Eq.* at 422, 74 *A.* 987.

There are no extraordinary equities created by the facts to cause the court to depart from the applicable rules. The present circumstances do not rise to the level of "surprise" or any other equitable ground on which to vacate the sale. AAAM's proofs are not sufficient to overcome the doctrines of equitable conversion and/or *caveat emptor.* Thus, AAAM's motion to vacate the sale is denied. The court's previous order of May 23, 2007, is vacated. Plaintiff's cross-motion is granted and the sale is confirmed.