**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3943-18

BASCOM CORPORATION,

      Plaintiff-Respondent,

v.

PATERSON COALITION
FOR HOUSING, INC.,

      Defendant-Appellant,

and

CITY OF PATERSON
DEPARTMENT OF COMMUNITY
DEVELOPMENT,

      Defendant-Respondent,

and

FERRO LABELLA & ZUCKER,
LLC, STATES RESOURCES
CORPORATION, PUBLIC
SERVICE ELECTRIC & GAS
CO., THE UNITED STATES OF
AMERICA, and
STATE OF NEW JERSEY,

Defendants,

and

COMMUNITY ASSET
PRESERVATION CORPORATION,

Defendant/Intervenor-
Respondent.

_____

Argued March 24, 2021 – Decided August 24, 2021

Before Judges Fuentes and Firko

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-011669-16.

John Anthony Calzaretto argued the cause for appellant Paterson Coalition for Housing, Inc. (Calzaretto & Bernstein, LLC, attorneys; David R. Cubby, on the briefs).

John C. Emolo, Assistant Corporation Counsel, argued the cause for respondent City of Paterson (City of Paterson Department of Law, attorneys; John C. Emolo, on the brief).

Susan B. Fagan-Rodriguez argued the cause for respondent Bascom Corporation (Robert A. Del Vecchio, LLC, attorneys; Susan B. Fagan-Rodriguez, of counsel and on the brief).

Stuart B. Klepesch argued the cause for respondent/intervenor Community Asset Preservation Corporation.

PER CURIAM

Paterson Coalition for Housing (PCH) appeals from an order entered by the Chancery Division, General Equity Part on April 1, 2019, denying its motion under Rule 4:50-1 to vacate a final judgment of foreclosure entered on September 21, 2017, of a tax sale certificate originally issued by the Tax Collector of the City of Paterson (City) pursuant to N.J.S.A. 54:5-46, of the Tax Sale Law[1] and thereafter acquired by Bascom Corporation (Bascom). PCH filed the motion to vacate six months after the January 2, 2018 sheriff's sale and more than nine months after the trial court had entered a final judgment of foreclosure.

Community Asset Preservation Corporation (CAPC), the purchaser of the property and intervenor in this appeal, had expended substantial funds to prepare the property for redevelopment. Under these circumstances, and mindful of prevailing legal standards, we hold that Judge Randal C. Chiocca correctly found PCH was not entitled to any relief under the equitable doctrine of laches. We also reject PCH's arguments attacking the soundness of Judge Chiocca's decision to grant CAPC's motion to intervene in this case. As purchaser, CAPC has an indisputable interest in the outcome of this litigation and was entitled to protect and defend its interest, independent of the City.

---

[1] N.J.S.A. 54:5-1 to -137.

I.

The property at issue here is located on Spruce Street and designated by the City on its property tax map as Block 4802, Lot 20. The site was part of the Great Falls Historic District. PCH purchased the property in October 1999 and claimed that it had paid property taxes for the ensuing nine years. Part of the property was used by PCH for its operations.

In October 2007, PCH applied for a property tax exemption based on its status as a charitable organization. City of Paterson v. Paterson Coal. for Hous., Inc., No. A-2287-14 (App. Div. Feb. 23, 2017), slip op. at 1. The Passaic County Board of Taxation granted an exemption, but only for the second half of 2008 and the first half of 2009. Ibid. PCH refused to pay taxes on the property for the second half of the 2009 tax year. On June 25, 2009, the City issued a tax sale certificate to recover the outstanding property taxes. Royal Tax Lien Services (Royal) purchased the certificate. Id. at 2. In August 2009, the City appealed in the Tax Court the Passaic Board of Taxation's decision to grant a one-year property tax exemption to PCH. Ibid. In response, PCH argued the property had been declared exempt from taxation, and the exemption should have been extended for at least three years.

4                                                                                    A-3943-18

On June 26, 2013, the City purchased tax sale certificate No. 2014-2772, issued by the County tax collector, for $44,906 for unpaid property taxes and sewer charges on the property. The City prevailed in all respects before the Tax Court, which granted the City's motion to have PCH's complaint dismissed with prejudice. Ibid. The court rejected PCH's cross-motion to invalidate the tax sale certificate and to apply the Freeze Act, N.J.S.A. 54:51A-8, to the two years succeeding the one-year exemption. This court affirmed the Tax Court's December 5, 2014 order. We also held that "the parties may return to the Chancery Division to consider [PCH's] challenge to the validity of the tax lien and tax sale certificate . . . [and] express[ed] no view as to the merits of that challenge." Id. at 12.

By letter dated March 9, 2016, Bascom informed PCH that it intended to obtain the City's Council's approval to acquire a lien on the property. Unless PCH redeemed the property by paying the outstanding taxes and interest in the amount of $209,093.31 within thirty days, Bascom would initiate foreclosure proceedings. The letter was sent by certified mail to PCH's office. PCH's Executive Director Therese Tolomeo signed the attached card acknowledging its receipt.

A-3943-18

On April 26, 2016, Bascom filed a foreclosure action on the property and sought to bar PCH's right of redemption.[2] PCH was served with process on June 27, 2016. It did not file a responsive pleading or seek to participate in any other form. On August 8, 2016, Bascom moved for the entry of a default judgment. The court entered a final judgment by default on October 13, 2016. The court vacated the judgment on October 28, 2016, when it discovered that PCH had filed an objection to the final judgment on October 11, 2016. The objection did not appear in the system at the time the court entered the initial judgment.

On April 17, 2017, the judge assigned to the case at the time signed an order granting Bascom's motion to strike PCH's objection to the judgment and declared the matter uncontested. Bascom thereafter moved for an order entering final judgment. On May 31, 2017, the same judge again signed an order striking PCH's objection to the entrance of a final judgment and deemed the matter to be uncontested. On June 13, 2017, Bascom again filed a notice of motion for the entry of final judgment. On September 21, 2017, the judge signed a final judgment and a writ of execution.

---

[2] Bascom named several other defendants who appear to also hold liens on the property. None of these putative parties responded or otherwise participated at the trial level or in this appeal.

A-3943-18

In a certification submitted to the court, CAPC's Director Michael DeBlasio averred that he attended the sheriff's sale scheduled on November 21, 2017, and was informed that the sale had been postponed at PCH's request. He also averred that, prior to the scheduled sale, neither he nor anyone in the organization had been in contact with Bascom. CAPC was at the time a non-profit organization whose primary goal was to acquire vacant and abandoned property with the intention of revitalizing urban municipalities throughout the State.

The sheriff's sale finally took place on January 3, 2018. CAPC was the highest bidder at $279,000. CAPC's attorney Stewart Klepesch submitted a certification in which he averred that a title search conducted in early 2018 revealed two tax sale certificates from sales in June 2016 and June 2017. CAPC took title to the property subject to these certificates. According to Klepesch, the sale was conducted "under a writ of execution on behalf of Bascom Corporation's judgment in the foreclosure of tax sale certificate No. 2014-2772." CAPC paid the full balance of the bid price. On January 16, 2018, it received the deed of conveyance from the sheriff's office. The deed was recorded on February 16, 2018.

A-3943-18

According to PCH's Executive Director Tolomeo, the City and its former Mayor Joey Torres had historically opposed PCH's ownership of this particular property. Tolomeo claimed that the attorney who represented her at the time failed to inform her of the status of the case and did not notify her that a final judgment had been entered and the property had been sold. According to Tolomeo, the attorney only told her that the November 2017 sheriff's sale had been adjourned.

On June 27, 2018, PCH filed a motion to vacate the September 21, 2017 final judgment of foreclosure and the January 2018 sheriff's sale, pursuant to Rule 4:43-3 and Rule 4:50-1. PCH also filed a notice of lis pendens on October 25, 2018. In September 2018, the City moved for summary judgment. The court granted CAPC's motion to intervene on March 4, 2019. On March 27, 2019, Judge Chiocca heard oral argument from counsel and rendered an oral decision denying PCH's motion to vacate the judgment. The judge signed an order dated April 1, 2019, denying the motion to vacate the foreclosure judgment and the sheriff's sale and a separate order granting the motion to discharge the notice of lis pendens.

Judge Chiocca found that PCH was aware of the foreclosure sale because it had twice written to the sheriff's office seeking an adjournment of the sale.

He also concluded that PCH did not present any basis from to find excusable neglect. The judge provided the following explanation for his finding:

> Service of the summons and complaint subsequently were delivered to [PCH's] registered agent at what appears to be his home address.
>
> Subsequently . . . and . . . significantly, in the Court's view, Mr. Anastasio was retained and actually filed pleadings in the action, [and] at least two objections to the entry of final judgment. He sought stays of the sheriff's sale. And he knew, and therefore [PCH] knew, that a sale was going to occur.
>
> There was no motion for reconsideration . . . of the entry of final judgment. There was no appeal taken.

The judge also rejected PCH's allegation of "fraud and illegal activity based on some sort of politically-based conspiracy," which allegedly included Bascom and CAPC. Judge Chiocca found no evidence of a nefarious interaction between CAPC and Bascom and characterized PCH's claims in this respect as "sheer speculation and innuendo."

The property was not tax exempt and therefore ineligible for sale. PCH lost ownership of the property when it "failed to pay the taxes or challenge the assessment that led to the taxes that are the subject of the tax sale certificate which is the basis of this action. Therefore, [it] is stuck with the assessment that was determined by the [C]ity." Under these circumstances, the judge found:

A-3943-18

The [C]ity had an absolute right to sell the tax sale certificate, and Bascom had the right to purchase same, Otherwise, the [C]ity would not have a mechanism to collect unpaid taxes.

[PCH's] challenges to the tax sale certificate process employed in this case . . . are no longer viable. [PCH] had the opportunity to raise defenses prior to the sale. To the extent that issues were raised, those issues were decided. The challenges are also barred by N.J.S.A. 54:5-52 . . . which puts the burden on the defendant to overcome the presumption of validity.

Finally, the judge held that PCH's claims were barred by the doctrine of laches because PCH had an attorney who had both the ability and responsibility to "make whatever applications or challenge the actions of the [c]ourt that went on during that period of time. And that's also true as to making a motion to vacate . . . the final judgment that ultimately was entered by the [c]ourt." PCH not only sat on its rights, and delayed acting during the time the sale and conveyance of the property took place. The judge thus concluded:

[CAPC] purchased the property for $279,000, paid for the title work, paid for the architectural services, engineering, paid for a survey . . . plus some additional taxes, $353,034 [in total]. [CAPC] [a]lso obtained a loan commitment in order to revitalize the property and move forward with redevelopment.

And there's a consequence as a result of the failure to move forward in order to challenge the final judgment prior to the sale. Therefore, the court will deny the motion to vacate the sheriff's sale and . . . the final

10

judgment. And, consequently, I will grant the motion
to discharge the lis pendens.

## II.

PCH argues that the court erred in applying the doctrine of laches because it failed to specify what defenses or claims were barred. It also argues that its claim of fraud should not have been barred because CAPC did not incur any expenses until after PCH's motion to vacate had been filed, and PCH retained an interest in the property by way of Bascom's lien. We reject these arguments because the record shows that Judge Chiocca did not abuse his discretion when he applied the doctrine of laches in this case. PCH waited six months after the sheriff's sale, and nine months after the final judgment of foreclosure to file its motion to vacate. PCH was well aware of the sale during which time CAPC incurred expenses. Our standard of review in these matters are well-settled.

A court may set aside a judgment of default in accordance with Rule 4:50-1 for good cause shown. R. 4:43-3. Under Rule 4:50-1, a judgment may be set aside as a result of mistake, fraud, or any other reason justifying relief. A trial court's determination to grant or deny any relief under Rule 4:50-1 warrants substantial deference and should not be reversed unless it results in a clear abuse of discretion. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion will be found when a decision is made without a rational

11

explanation, inexplicitly departed from established policies, or rested on an impermissible basis. Ibid. This standard specifically applies to motions to vacate foreclosure judgments and related sheriff's sales. United States v. Scurry, 193 N.J. 492, 502 (2008).

The General Equity Part has the power to vacate a foreclosure sale based on considerations of equity and justice. Crane v. Bielski, 15 N.J. 342, 346 (1954). However, this power should be used sparingly and only to correct a plain injustice or injury, such as fraud, accident, surprise or irregularity in the sale. Midfirst Bank v. Graves, 399 N.J. Super. 228, 232 (Ch. Div. 2007). As with Rule 4:50-1, the court's determination will be left undisturbed unless it constitutes a clear abuse of discretion. Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 173 (App. Div. 2005).

Laches is an equitable doctrine which operates as an affirmative defense that precludes relief when there is an unexplainable and inexcusable delay in exercising a known right, which results in prejudice to another party. Fox v. Millman, 210 N.J. 401, 417 (2012). It is an equitable defense that may be interposed in the absence of the statute of limitations. Id. at 418. Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith in

A-3943-18

believing that the right had been abandoned. Ibid. Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court. Ibid. The key factors to be considered in deciding whether to apply the doctrine of laches are the length of the delay, the reasons for the delay, and the changing conditions of either or both parties during the delay. Knorr v. Smeal, 178 N.J. 169, 181 (2003). The core equitable concern is whether a party has been harmed by the delay. Ibid.

At this point, some background regarding the Tax Sale Law is useful.

> The Tax Sale Law serves as a framework to facilitate the collection of property taxes. It confers on a municipality that is owed real estate taxes a continuous lien on the land for the delinquent amount as well as for all subsequent taxes, interest, penalties and costs of collection. The Tax Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties. By authorizing the sale of liens in a commercial market, the Tax Sale Law gives rise to a municipal financing option that provides a mechanism to transform a non-performing asset into cash without raising taxes.
>
> [In re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 61-62 (2014) (internal citations omitted).]

As codified by the Legislature, the Tax Sale Law is "a remedial statute and to operate both prospectively and retrospectively, and be liberally construed to effectuate the remedial objects thereof." N.J.S.A. 54:5-3 The underlying

purposes of tax sale certificates are to secure marketable titles to land, thereby maximizing the recovery of unpaid municipal taxes and other municipal charges, and to quickly return to the tax rolls the property on which such charges have remained in default. Town of Phillipsburg, 380 N.J. Super. at 162.

The purchaser of a certificate for unpaid taxes does not have title to the land, but has a lien interest derived from the taxing district. Jefferson Township v. Block 447A, Lot 10, 228 N.J. Super. 1, 4 (App. Div. 1988). The holder has the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold. Ibid. In addition, the holder has the right to acquire title by foreclosing if the delinquent owner does not redeem the certificate within two years from the date of the sale. Id. at 4-5. However, the property owner has the right to redeem at any time up to the entry of final judgment. Simon v. Cronecker, 189 N.J. 304, 319 (2007). "A subsequent tax sale certificate . . . has priority over an earlier certificate, and the foreclosure of the later certificate can extinguish the earlier certificate." Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 425 (2018), (quoting Lato v. Rockaway Township, 16 N.J. Tax 355, 363 (Tax 1997)). After a judgment of foreclosure is entered, "no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the

grounds of lack of jurisdiction or fraud in the conduct of the suit." N.J.S.A. 54:5-87.

PCH claims that laches is not applicable because its claim is based on fraud, which has a six-year statute of limitations. Even where there is an applicable statute of limitations, there is a role for the equitable doctrine of laches. Fox, 210 N.J. at 419. Laches will ordinarily be utilized in suits brought in equity; statutes of limitation, although not ignored, have no obligatory application in such suits. Id. at 420. Actions to foreclose and bar the right of redemption are actions in equity. N.J. Mortg. & Inv. Corp. v. Young, 134 N.J. Super. 392, 398 (Law Div. 1975). Therefore, the statute of limitations for fraud did not bar application of the laches doctrine in this case. Ultimately, the dispositive weakness in PCH's fraud argument is that it has not presented any competent evidence of fraud. Its claims that CAPC did not incur any expenses until after the motion to vacate had been filed is baseless. PCH does not have any legal support for its claim that it retained an interest in the property by way of Bascom's tax sale certificate, or that that interest would prelude laches.

PCH's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We only briefly note that PCH contends that the court erred in permitting the City, Bascom, and CAPC to oppose its

15

motion to vacate because each party failed to submit certifications in opposition to the motion. Under Rule 1:6-2(a), a motion "shall be deemed uncontested and there shall be no right to argue orally in opposition unless responsive papers are timely filed and served stating with particularity the basis of the opposition to the relief sought." However, PCH fails to disclose where in the record it sought to bar respondents' opposition pursuant to Rule 1:6-2(a) for failing to file certifications. It is long-established that an issue not raised before the trial court will not be addressed on appeal unless it involves an issue of great public importance or goes to the jurisdiction of the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). PCH fails to come close to satisfying this standard of review.

## III.

We cannot conclude our analysis, however, without addressing an important and disturbing issue, the obstreperous conduct and disrespectful demeanor displayed by PCH's trial counsel to Judge Chiocca. To be clear, we are not referring to PCH's appellate counsel. The record of the oral argument shows PCH's trial attorney repeatedly interrupted Judge Chiocca as he was delivering his oral decision from the bench and intentionally ignored the many requests by both the Sheriff's Officer assigned to the courtroom and by the Judge

16                                                                                          A-3943-18

himself to stop interrupting his presentation of his ruling. The attorney finally stopped only when the Judge admonished him that "if you interrupt my rendering of the decision, I'm going to ask you to please leave."

The following excerpt illustrates counsel's unprofessional conduct.

> THE JUDGE: The allegations, particularly as to -- well, with regard to Community Asset, as to any knowledge or involvement in any type of scheme to interfere with Paterson Coalition, or to engage in any type of politically-based conspiracy is -- is just sheer speculation and innuendo.
>
> [ATTORNEY FOR PCH]: Unbelievable. Unbelievable.
>
> SHERIFF'S OFFICER: Sir?
>
> [ATTORNEY FOR PCH]: I mean you're -- we're just going to -- we're just going to -- we're just going to --
>
> SHERIFF'S OFFICER: Sir?
>
> [ATTORNEY FOR PCH]: -- we just going to maneuver --
>
> THE COURT: All right.
>
> SHERIFF'S OFFICER: The Judge is making a decision --
>
> THE COURT: No.
>
> SHERIFF'S OFFICER: -- and you've got to --
>
> [ATTORNEY FOR PCH]: I -- I would like to reflect for the record that the Passaic County Sheriff's Officer --

17

SHERIFF'S OFFICER: No.

[ATTORNEY FOR PCH]: -- has twice come over to this --

SHERIFF'S OFFICER: Sir, please?

[ATTORNEY FOR PCH]: -- counter while I am sitting down, well under control to threaten me for speaking against --

SHERIFF'S OFFICER: Let's –

[ATTORNEY FOR PCH]: -- what the Judge is putting onto the record.

SHERIFF'S OFFICER: -- I'm not threatening you, sir. The Judge is making a decision.

[ATTORNEY FOR PCH]: I disagree, officer. I believe that you have walked over here twice now --

THE COURT: All right. You know what, all right.

[ATTORNEY FOR PCH]: -- to -- to prevent me from speaking on –

SHERIFF'S OFFICER: Sir?

[ATTORNEY FOR PCH]: -- the record –

SHERIFF'S OFFICER: Sir?

[ATTORNEY FOR PCH]: -- in this matter. Twice.

THE COURT: [Addresses counsel by his last name]

A-3943-18

SHERIFF'S OFFICER: Then, sir --

THE COURT: please control yourself.

SHERIFF'S OFFICER: Counsel --

THE COURT: The . . . officer is charged with --

[ATTORNEY FOR PCH]: I -- I have a hard time controlling myself when I see the law being distorted to benefit parties that did wrong.

SHERIFF'S OFFICER: Sir?

[ATTORNEY FOR PCH]: I have a very big problem with that –

THE COURT: Okay.

[ATTORNEY FOR PCH]: -- and will continue to do so.

THE COURT: Either you can sit there and listen to my decision or you can leave, [addressing counsel by his last name].

[ATTORNEY FOR PCH]: Your . . . decision is -- is -- is -- is extrajudicial. There's nothing here -- it's not based on anything.

THE COURT: All right.  Would you like to leave?

[ATTORNEY FOR PCH]: Oh, I would like to listen to it because we are going to have to appeal it at -- at some point, obviously, which is just another kick in the face to my client --

THE COURT: You're being --

19

[ATTORNEY FOR PCH]: - who did nothing but serve this city and now will have to appeal against -- against these clowns based on absolutely nothing.

SHERIFF'S OFFICER: Sir?

THE COURT: Mr. -- Mr. -- no, no, no. One -- no, I don't want anybody to say anything. [addressing counsel by his last name], you're acting in [an] extremely unprofessional and unreasonable manner. I'm going to ask you to please refrain from making comments. If you disagree with the [c]ourt's decision, which obviously you do --

[ATTORNEY FOR PCH]: I request the [c]ourt then to put -- to put statements of fact on the record rather than making conclusions that --

THE COURT: [Addresses counsel by his last name]

[ATTORNEY FOR PCH]: -- that my conspiracy theories are not supported by evidence.

THE COURT: [Addresses counsel by his last name], I'm going to ask you one more time. If you interrupt me, you're going to be asked to leave, please . . . .

At this point, the judge again made detailed findings of the procedural history of the case and restated the substantive analysis that supported the ultimate ruling denying PCH's applications. At the conclusion of this recitation, the judge addressed the attorneys present in the courtroom, including attorney for PCH, as follows:

20

THE COURT: the [c]ourt will deny the motion to vacate the sheriff's sale and the . . . final judgment. And, consequently, I will grant the motion to discharge the lis pendens. I will sign orders. They will be uploaded in eCourts. All right. Okay. Gentlemen, I'll send the order out short[ly].

[ATTORNEY FOR PCH]: Your Honor, regarding the certified mail notice of the assignment sale, what was -- what was the [c]ourt's findings on that? I -- I -- that -- that my client received a notice of assignment sale by certified mail?

THE COURT: My findings are reflected in the record.

[ATTORNEY FOR PCH]: And I am asking the [c]ourt to substantiate [its] findings because I -- I am unclear on that.

THE COURT: All right.

[ATTORNEY FOR PCH]: And the certifications before the [c]ourt don't say that my client received a --

THE COURT: Okay. All right. All right, [addressing counsel by his last name]. All right, gentlemen.

[ATTORNEY FOR PCH]: So you don't -- so Your Honor, you're cutting off conversation here and walking out of the room when my client is asking for specific findings of law and facts –
. . . .

Is the [c]ourt denying -- . . . -- my client's right to have specific -- . . . findings of law –

THE COURT: -- I've rendered my ruling.

21

[ATTORNEY FOR PCH]: and fact on the record?

THE COURT: Have a nice day, everyone.

[ATTORNEY FOR CITY OF PATERSON]: Thank you.

[ATTORNEY FOR PCH]: <u>Yeah. My point is you're corrupt, that's my point</u>.

[(Emphasis added).]

The attorney for PCH continued this unprofessional diatribe even after the judge had left the bench. The audio recording equipment in the courtroom captured the attorney for PCH make the following menacing statement to one of the attorneys in the case: "Whoa. Whoa. I'm coming after you, too, counsel."

Pursuant to its exclusive constitutional role and authority under N.J. Const. art. VI, § 2, ¶ 3, the Supreme Court promulgated the Rules of Professional Conduct (RPC), the ethical guidelines that regulate the practice of law. RPC 3.5(c) emphatically states: "A lawyer shall not . . . engage in conduct intended to disrupt a tribunal[.]" RPC 8.4(a) to (g), delineates seven distinct types activities or behavior that constitute "professional misconduct for a lawyer." Of particular relevance here, RPC 8.4(d) states: "it is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]"

22

As an intermediate appellate court, we do not have the authority to determine whether PCH's attorney's conduct before Judge Chiocca constitutes an ethical violation. However, pursuant to the Code of Judicial Conduct, Canon 3.15(b):

> A judge who receives reliable information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

We thus adhere to our ethical obligation as judges and refer this matter to the Office of Attorney Ethics to investigate and take any action it deems appropriate under these circumstances. Our decision in this respect in no way questions the dignified manner Judge Chiocca chose to deal with PCH's trial counsel's disruptive conduct. Indeed, Judge Chiocca displayed remarkable composure in the face of PCH's trial counsel's unrelenting discourteous behavior. However, our role as appellate judges allows us to examine the record of what occurred from a different vantage point. We have the opportunity to read the verbatim account of what transpired in the courtroom unburdened by the pressure of responding in real time. And perhaps most importantly, unlike

A-3943-18

the federal judges who serve in the Circuit Courts of Appeal, all of us in the appellate division are former trial judges. We are keenly aware of the pressures and inherent difficulties involved in the management of a courtroom. That is why we must support our colleagues at the trial level when events like the one we have described here undermine their dignity and disrupt the orderly administration of our trial courts.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3943-18